1    KENNETH D. SULZER (SBN 120253)
ksulzer@constangy.com
2    SARAH KROLL-ROSENBAUM (SBN 272358)
skroll-rosenbaum@constangy.com
3    SAYAKA KARITANI (SBN 240122)
skaritani@constangy.com
4    ANTHONY SBARDELLATI (SBN 246431)
asbardellati@constangy.com
5    MATTHEW SCHOLL (SBN 301560)
mscholl@constangy.com
6    CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
2029 Century Park East, Suite 1100
7    Los Angeles, CA  90067
Telephone:  (310) 909-7775
8    Facsimile:   (424) 276-7410

9    Attorneys for Defendant
MEDICAL SOLUTIONS, L.L.C.

10

**UNITED STATES DISTRICT COURT**

11

**NORTHERN DISTRICT OF CALIFORNIA**

12

13    LAURA BUFORD, on behalf of
herself, all others similarly situated,
14    and all aggrieved employees,

15          Plaintiff,

16      vs.

17    MEDICAL SOLUTIONS, L.L.C., a
limited liability corporation; and
18    DOES 1 to 100, Inclusive,

19         Defendants.

Case No.:

**NOTICE OF REMOVAL OF ACTION
TO THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF CALIFORNIA;
DECLARATIONS OF ANTHONY
SBARDELLATI AND CHRIS AHL IN
SUPPORT THEREOF**

(Alameda County Superior Court Case
  No. RG18904415)

First Amended
Complaint Filed:   June 14, 2018

20

21

22

23    **TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN**

24    **DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER**

25    **ATTORNEYS OF RECORD:**

26      **PLEASE TAKE NOTICE** that Defendant Medical Solutions, L.L.C.

27    ("Medical Solutions" or "Defendant") hereby removes the above-titled action from

28    the Superior Court of the State of California for the County of Alameda, to the

United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, asserting original federal jurisdiction under the Class Action Fairness Act.  28 U.S.C. § 1332(d).  In support of such removal, Medical Solutions states as follows:

1.    On May 10, 2018, Plaintiff Laura Buford ("Plaintiff") commenced an action against Medical Solutions by filing a Complaint in the Superior Court of California for the County of Alameda, asserting six causes of action for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, and (6) unfair business practices, on behalf of herself and a putative class of persons who have been employed by Medical Solutions in California since May 10, 2014 and classified as "non-exempt."  (Declaration of Anthony Sbardellati ("Sbardellati Decl.") ¶ 2, Ex. A (Complaint).)

2.    On June 14, 2018, Plaintiff filed a First Amended Complaint adding a seventh cause of action for failure to pay all wages timely upon separation of employment and an eighth cause of action for penalties under the California Private Attorneys General Act ("PAGA").  (*Id*., ¶ 4, Ex. C (First Amended Complaint ["FAC"]).)  A copy of the First Amended Complaint was not served on Medical Solutions until July 10, 2018.  (*Id*.)

3.    Medical Solutions answered the First Amended Complaint on July 19, 2018.  (*Id*., ¶ 9, Ex. H.)

4.    Neither the Complaint nor the First Amended Complaint allege an amount in controversy, an estimated number of putative class members, or other facts from which it can be ascertained from the face of the pleadings that the case is one which is removable.  (*Id.*, ¶ 10; Complaint; FAC.)  However, Medical Solutions has conducted its own investigation and review of its employment and payroll records.  (Declaration of Chris Ahl ("Ahl Decl.") ¶¶ 6-7.)  Based on this review, it is

clear that this action is properly removable under the Class Action Fairness Act because the statute's diversity, numerosity, and amount in controversy requirements are met. Accordingly, this removal is appropriate and timely under 28 U.S.C. § 1446(b). *Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013) ("We conclude that §§ 1441 and 1446, read together, permit a defendant to remove [a CAFA action] . . . on the basis of its own information . . . A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained . . . [b]ut neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own.")

5.     **Jurisdiction**. This Court has original jurisdiction over this action under the Class Action Fairness Act ("CAFA"), codified in pertinent part at 28 U.S.C. § 1332(d), because this action is a class action in which at least one class member is a citizen of a state different from that of Defendant, Defendant is not a citizen of California, the number of class members is greater than 100, and the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B), and (d)(6). This action is therefore properly removable pursuant to 28 U.S.C. § 1441(a).

6.     **Numerosity.** Plaintiff purports to bring the causes of action alleged in the First Amended Complaint on behalf of various classes consisting of "current and former non-exempt hourly employees employed by [Medical Solutions] in California at any time within the four years prior to the filing of the initial complaint" (the "putative class members"). (FAC ¶ 34.)

7.     CAFA jurisdiction does not attach where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." 28 U.S.C. § 1332(d)(5)(B). The First Amended Complaint alleges that the putative classes "are so numerous that joinder of all members is impracticable." (FAC ¶ 35.) Medical Solutions' records show that approximately 2,566 putative class members worked

one or more assignments for Medical Solutions in California during the four years prior to the filing of the Complaint through June 15, 2018. (Ahl Decl. ¶ 8.) Accordingly, CAFA's numerosity requirement is met.

8.    **Diversity**. Plaintiff alleges that she "is and was a resident and citizen of California" and that she was employed by Medical Solutions in both Marin County and Alameda County during portions of the relevant class period. (FAC ¶ 3.) Although Plaintiff completed tax-home documentation during her employment with Medical Solutions representing that her permanent address is in the State of Alabama, Medical Solutions assumes for the purposes of this removal that Plaintiff is in fact a citizen of California. (Ahl Decl. ¶ 7.)

9.    Medical Solutions is a limited liability company organized under the laws of the State of Delaware and headquartered in the State of Nebraska. (FAC ¶ 6; Ahl Decl. ¶ 2.) For the purposes of diversity under 28 U.S.C. § 1332, "LLCs have the citizenship of all of their owners/members." *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006). Medical Solutions is owned by Medical Solutions Buyer, LLC and Medical Solutions Intermediate Holdings, LLC, both of which are also limited liability companies organized under the laws of the State of Delaware and with their principal places of business in the State of Nebraska. (*Id*., ¶ 3.) Medical Solutions Buyer, LLC is a wholly owned subsidiary of Medical Solutions Intermediate Holdings, LLC. (*Id*., ¶ 4.) Medical Solutions Intermediate Holdings, LLC is a wholly owned subsidiary of Medical Solutions Holding, Inc., which is a corporation incorporated in the State of Delaware and headquartered in the State of Nebraska. (*Id*., ¶ 5.) "A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Accordingly, Medical Solutions Holding, Inc. is a citizen of Delaware, where it is incorporated, and Nebraska, where it maintains its principle place of business. Thus, because Medical Solutions is a limited liability

1  company owned by limited liability companies, which are in turn owned by a

2  corporation that is a citizen of Delaware and Nebraska, Medical Solutions was at the

3  time of the filing of this action, and still is, a citizen of Delaware and Nebraska.

4  (*Id.*, ¶¶ 2-5.)

5      10.   The First Amended Complaint also names as defendants "Does 1

6  through 100." Does 1 through 100 are fictitious defendants who are not parties to

7  this action, are not required to join in a removal petition, and must be disregarded

8  for removal purposes. *See* 28 U.S.C. §§ 1441(a) and 1447(e); *Soliman v. Philip*

9  *Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("citizenship of fictitious defendants

10  is disregarded for removal purposes"); *Fristoe v. Reynolds Metals Co.*, 615 F.2d

11  1209, 1213 (9th Cir. 1980) (same).

12      11.   As Medical Solutions is not a citizen of California, and because Plaintiff

13  and Medical Solutions are citizens of different states, CAFA's minimal diversity

14  requirement is satisfied.  28 U.S.C. § 1332(d)(2)(A).

15      12.   **Amount in Controversy.**  The claims of the individual members in a

16  class action are aggregated to determine if the amount in controversy exceeds the

17  sum or value of $5,000,000, exclusive of interest or costs.  28 U.S.C. § 1332(d)(6).

18  Congress intended for federal jurisdiction to be appropriate under CAFA "if the

19  value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the

20  plaintiff or the viewpoint of the defendant, and regardless of the type of relief

21  sought (e.g., damages, injunctive relief, or declaratory relief)."  Senate Judiciary

22  Committee Report, S. Rep. No. 109-14, at 42.  Moreover, the Senate Judiciary

23  Committee's Report on the final version of CAFA makes clear that any doubts

24  regarding the maintenance of interstate class action in state or federal court should

25  be resolved in favor of federal jurisdiction.  *Id.* ("[I]f a federal court is uncertain

26  about whether 'all matters in controversy' in a purported class action 'do not in the

27  aggregate exceed the sum or value of $5,000,000,' the court should err in favor of

28  exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended

to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendants.")  Because there is a presumption in favor or removal, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014).

13.    Where a statutory maximum is specified, courts may consider the maximum statutory penalty available in determining whether the jurisdictional amount in controversy requirement is met.  *Coleman v. Estes Express Lines Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *citing Korn v. Polo Ralph Lauren, Inc.,* 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008); *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n. 3 (9th Cir. 2000).

14.    Plaintiff alleges eight causes of action in the First Amended Complaint, including: (1) failure to provide required meal periods (FAC ¶¶ 45-55); (2) failure to provide required rest periods (*Id.*, ¶¶ 56-64); (3) failure to provide complete and accurate wage statements (*Id.*, ¶¶ 65-74); (4) failure to pay reimbursable expenses (*Id.*, ¶¶ 75-81); (5) failure to pay wages for all hours of work (*Id.*, ¶¶ 82-88); (6) unfair competition (*Id.*, ¶¶ 89-92); (7) failure to pay all wages timely upon separation of employment (*Id.*, ¶¶ 93-102); and (8) violation of the Private Attorneys General Act (*Id.*, ¶¶ 103-08).  Plaintiff seeks, among other things, declaratory judgment, injunctive relief, restitution, liquidated damages, premium pay for missed meal and rest periods, wage statement penalties, waiting time penalties, PAGA penalties, reimbursements for business-related expenses, pre-judgment and post-judgment interest, attorneys' fees, and costs.  (*Id.*, "Prayer for Relief.")

15.    Medical Solutions denies that Plaintiff is entitled to take anything by way of the First Amended Complaint, either on her own behalf or on behalf of the

putative classes.  Nevertheless, the amount in controversy is dictated by the extent of Plaintiff's claims, not their merits.  *See Roth v. Comerica Bank.*, 799 F. Supp. 2d 1107, 1117 (C.D. Cal. 2010) ("The ultimate inquiry is what amount is 'put in controversy' by the plaintiff's complaint, not what a defendant will actually owe."), *quoting Korn, supra*, 536 F. Supp. 2d at 1205.

16.   Although Medical Solutions denies all liability, a review of Medical Solutions' employment and payroll records shows that the alleged amount in controversy herein easily exceeds $5,000,000 in the aggregate based on the allegations contained in the First Amended Complaint.  As described below, even when *excluding* Plaintiff's claims for injunctive relief, reimbursement of business expenses, interest, costs, and PAGA penalties, the amount in controversy in this lawsuit is at least **$16,242,752.19**.

17.   The Putative Class.  Medical Solutions is a healthcare staffing company that delivers short-term staffing solutions by providing skilled healthcare professionals to healthcare facilities throughout the country.  (Ahl Decl. ¶ 6.)  These non-exempt healthcare professionals who have worked assignments for Medical Solutions in California make up the putative classes in this action.

18.   Medical Solutions' records indicate that during the four years prior to the filing of the Complaint (i.e., May 10, 2014) through June 15, 2018, Medical Solutions employed approximately 2,566 non-exempt employees in California.  (*Id.*, ¶ 8.)  These employees worked approximately 7,017 assignments and a total of about 73,359 workweeks.  (*Id.*)

19.   During the three years prior to the filing of the Complaint (i.e., May 10, 2015) through June 15, 2018, Medical Solutions employed approximately 2,045 non-exempt employees in California that worked one or more assignments, and who were not currently on assignment for the company as of June 15, 2018.  (*Id.*, ¶ 9.)

20.   During the one year prior to the filing of the Complaint (i.e., May 10, 2017) through June 15, 2018, Medical Solutions employed approximately 1,232

non-exempt employees in California—these employees worked approximately 2,508 assignments and a total of about 23,258 workweeks.  (*Id.*, ¶ 10.)

21.   Medical Solutions' employees in California are paid weekly, and they received an average straight-time rate of about $20.74 during the putative class period.  (*Id.*, ¶ 11)

22.   Because different healthcare facilities have different scheduling needs, the schedules worked by Medical Solutions' healthcare professionals in California vary significantly from assignment to assignment.  (*Id.*, ¶ 12.)  While these schedules vary, the most typical assignments require that a healthcare professional work three 12-hour shifts per week, and Medical Solutions' records indicate that during the four years prior to the filing of the Complaint through June 15, 2018, 4,593 of the 7,017 assignments in California (65.4%) required that healthcare professionals work three 12-hour shifts per week.  (*Id.*)   Other common schedules required that healthcare professionals work five 8-hour shifts per week or four 12-hours shifts per week.  (*Id.*)

23.   Unpaid Wages. Plaintiff seeks unpaid minimum wages pursuant to California Labor Code §§ 1194 and 1197.  Specifically, Plaintiff alleges that Medical Solutions "automatically deducted for off-duty meal periods despite failing to relieve Plaintiff and non-exempt employees for off duty meal periods of at least thirty minutes."  (FAC ¶¶ 31, 86.)  Thus, under Plaintiff's theory of the case, putative class members are purportedly due wages for meal breaks through which they were required to work or otherwise remain on-duty but were not compensated.

24.   The statute of limitations for the recovery of damages for failure to pay minimum or overtime wages is three years.  Cal. Civ. Proc. Code § 338(a).  However, Plaintiff additionally seeks restitution of unpaid wages pursuant to California Business & Professions Code §§ 17200, *et seq.* (*Id.*, ¶¶ 89-92), the statute of limitations on which is four years.  *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 178-79 (Cal. 2000) ("We recognize that any business act or

practice that violates the Labor Code through failure to pay wages is, by definition … an unfair business practice … *Any* action on *any* UCL cause of action is subject to the four-year period of limitations created by that section.") (Emphasis in original.)  Thus, the state of limitations for Plaintiff's claim for unpaid wages is four years.

25.    As set forth in paragraph 18, *supra*, approximately 2,566 putative class members worked 73,359 workweeks during the four years prior to the filing of the Complaint through June 15, 2018—these putative class members worked assignments ranging from three 12-hour shifts per week to five 8-hour shifts per week.  Because all of the putative class members work shifts of at least 8 hours, any additional time worked would be paid at an overtime rate equal to at least one and one-half times the straight time rate (and for the majority of class members who worked 12-hour shifts, additional time worked would necessarily be paid at the double time rate).  Regardless, in order to provide as conservative an estimate as possible, Medical Solutions assumes that all unpaid wages owed would be paid at the average straight time rate of $20.74.  Assuming that putative class members missed or were otherwise required to remain on-duty for only one meal period per workweek during the class period, and that they would thus be owed an additional half-hour of pay per workweek, the value of this claim is at least **$760,732.83** (73,359 workweeks x 1 violation/workweek x $20.74/hour x 0.5).

26.    Liquidated Damages.  In addition to unpaid wages, Plaintiff seeks "liquidated damages in the amount of their unpaid minimum wage" pursuant to Labor Code § 1194.2.  (FAC ¶ 88.)  Section 1194.2 provides that claims for liquidated damages are subject to the same statute of limitations as that of the claim for underlying wages, which in this case is four years.  As set forth above, assuming that putative class members are owed an average of only half an hour of additional pay per week at the average straight time rate of $20.74, the amount of minimum wages sought would be at least $760,732.83.  Accordingly, the value of Plaintiff's

claim for liquidated damages is also at least **$760,732.83**.

27.   <u>Meal Period Violations</u>.  Plaintiff next generally alleges that putative class members were not provided with compliant, duty-free meal periods in accordance with California law, or meal period premiums in lieu thereof, in violation of Labor Code § 226.7. (FAC ¶¶ 13-19.)  Claims for meal period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a).  *Murphy v. Kenneth Cole Prod.'s, Inc.*, 40 Cal.4th 1094, 1102-14 (2007).  However, Plaintiff additionally seeks meal period premium pay pursuant to Business & Professions Code §§ 17200, *et seq.* (*Id*., ¶¶ 89-92), the statute of limitations on which is four years.  *Cortez, supra*, 23 Cal.4th at 178-79.  Employees that miss or are otherwise not provided with a compliant, duty-free meal period are entitled to one additional hours' pay at the regular rate for each workday that the meal period is not provided.  Cal. Labor Code § 226.7(c).

28.   Assuming that putative class members missed or otherwise received, on average, one noncompliant meal period per workweek for each of the approximately 73,359 weeks worked during the 4 years prior to the filing of the Complaint through June 15, 2018, the amount in controversy as to this claim would be **$1,521,465.66** (73,359 workweeks x 1 violation/workweek x $20.74/violation).

29.   <u>Rest Period Violations</u>.  Plaintiff similarly alleges that putative class members were generally not provided with duty-free rest breaks in compliance with California law, or rest period premiums in lieu thereof, in violation of Labor Code § 226.7.  (FAC ¶¶ 20-25).  Claims for rest period violations are subject to the three-year statute of limitations in Code of Civil Procedure § 338(a).  *Murphy*, *supra*, 40 Cal.4th at 1102-14.  However, Plaintiff additionally seeks rest period premium pay pursuant to Business & Professions Code §§ 17200, *et seq.* (*Id*., ¶¶ 89-92), the statute of limitations on which is four years.  *Cortez, supra*, 23 Cal.4th at 178-79.  As with meal period violations, employees that miss or are otherwise not provided with a compliant, duty-free rest period are entitled to one additional hours' pay at

the regular rate for each workday that one or more rest periods are not provided. Cal. Labor Code § 226.7(c).

30.    Assuming again that putative class members missed or otherwise received one noncompliant rest period per workweek for each of the approximately 73,359 weeks worked during the 4 years prior to the filing of the Complaint through June 15, 2018, the amount in controversy as to this claim would also be **$1,521,465.66** (73,359 workweeks x 1 violation/workweek x $20.74/violation).

31.    <u>Wage Statement Violations</u>. Plaintiff next seeks statutory penalties for Medical Solutions' alleged failure to provide accurate wage statements in violation of Labor Code § 226.  (FAC ¶¶ 26-27, 65-74.)  Specifically, Plaintiff alleges that by failing to compensate putative class members for all time worked and failing to provide legally compliant meal or rest breaks, or premium pay in lieu thereof, Medical Solutions' wage statements inaccurately stated gross and net pay and failed to include meal and rest period premiums allegedly due.  (*Id*., ¶¶ 68-69.)  Plaintiff alleges that this violation was "knowing and intentional."  (*Id*., ¶ 70.)  Under Section 226(e), an injured employee is entitled to recover the greater or actual damages or penalties of $50 for the initial pay period in which a violation occurs and $100 for each violation in a subsequent period (up to an aggregate penalty of $4,000) for a knowing and intentional violation.  Cal. Labor Code § 226(e).  The statute of limitations to seek penalties for failure to provide accurate wage statements is one year.  Cal. Code Civ. Proc. § 340(a).

32.    As set forth in paragraph 20, *supra*, 1,232 putative class members worked 23,258 workweeks during the year prior to the filing of the Complaint through June 15, 2018, for an average of 18.9 workweeks per putative class member.  As these employees were paid on a weekly basis, each putative class member would have received, on average, about 19 wage statements during the relevant period, for a total of 23,408 wage statements.  Because Plaintiff alleges that putative class members were, as a matter of policy and practice, not compensated

for all time worked or provided legally compliant meal and rest breaks, there would presumably be one or more violations in nearly all—if not all—wage statements provided by Medical Solutions under Plaintiff's theory of the case. However, in order to estimate as conservatively as possible, Medical Solutions assumes for the purposes of this removal that putative class members received, on average, 9 wage statements with errors (i.e., less than half) for a total of 11,088 inaccurate wage statements (1,232 employees x 9 wage statements). Accordingly, the amount in controversy as to this claim is at least **$1,047,200** ((1,232 initial violations x $50) + (9,856 subsequent violations x $100)).

33. <u>Waiting Time Penalties</u>. Plaintiff also seeks statutory waiting time penalties pursuant to Labor Code §§ 201-203 because Medical Solutions allegedly failed to pay all wages owed to putative class members at the time of termination of employment. (FAC ¶¶ 93-102.) Under Section 203, terminated employees who are not paid all wages owed at the time of separation from employment may recover a penalty that is equal to their daily wage up to a maximum of 30 days. Cal. Labor Code § 203(a). The statute of limitations for a claim for waiting time penalties is three years. Cal. Labor Code § 203(b); *Pineda v. Bank of Am., N.A.*, 50 Cal.4th 1389 (2010).

34. As set forth in paragraph 19, *supra*, Medical Solutions employed approximately 2,045 putative class members during the three years prior to the filing of the Complaint through June 15, 2018 who ended one or more assignments with Medical Solutions and who were not currently on assignment with the company as of June 15, 2018. Assuming that these putative class members worked, on average, *only* 8 hours per day (and as set forth in paragraph 22, nearly two-thirds of the assignments worked by putative class members required 12-hour shifts), the average daily wage would be $165.92 ($20.74/hour x 8 hours/day). Assuming that each of the 2,045 putative class members recover the maximum waiting time penalty of 30 days of wages of $4,977.60 ($165.92/day x 30 days)), the total amount

in controversy for this claim would be **$10,179,192** (2,045 putative class members x $4,977.60 penalty/class member).

35.    <u>PAGA Penalties</u>. Plaintiff also seeks penalties pursuant to the Private Attorneys General Act for alleged violations of Labor Code §§ 201, 202, 203, 204, 210, 216, 221, 222, 223, 224, 225, 226, 226.3, 226.6, 226.7, 256, 512, 558, 558.1, 1174, 1174.5, 1194, 1197, 1197.1, 1198, 1199, 2699, 2802, 2810.5, and the applicable Wage Orders.  (FAC ¶ 106.)  Medical Solutions assumes for the purposes of this petition that the amount of PAGA penalties in controversy is **$0.**

36.    <u>Reimbursement of Business Expenses.</u>  Plaintiff also seeks reimbursement for expenses allegedly incurred by class members in connection with "travel[ing] to multiple sites within the workweeks for business purposes" and cell phone expenses.  (FAC ¶¶ 75-81.)  Given the vagueness of these allegations, Medical Solutions assumes for the purposes of this petition that the amount in controversy as to this claim is also **$0.**

37.    <u>Attorneys' Fees</u>. Plaintiff additionally seeks attorneys' fees to the extent recoverable by statute, including Labor Code §§ 218.5, 226(e), and 1194, as well as PAGA.  (*See* FAC, Prayer for Relief, 4(C).)  When a party seeks to recover attorneys' fees provided for by statute, these fees—including future fees—are included in the amount in controversy to reach CAFA's $5,000,000 minimum. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 *7 (9th Cir. Aug. 8, 2018) ("Because the law entitles [plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy [in a removal under CAFA]"); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). It is well established in the Ninth Circuit that the benchmark for setting attorneys' fees in the class action context is 25% of the common fund.  *See*, *e.g.*, *Vizcaino v. Mircosoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Bellinghausen v. Tractor Supply Co*., 306

F.R.D. 245, 260 (N.D. Cal. 2015), *citing Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001).

38.    Labor Code §§ 218.5, 226(e), and 1194.3 authorize the recovery of reasonable attorneys' fees in actions for the recovery of unpaid wages and inaccurate wage statements.  Assuming that Plaintiff is able to recover attorneys' fees equal to 25% of the amount recovered for her claims for unpaid wages and inaccurate wage statements (and excluding any fees recoverable pursuant to her claims for liquidated damages equal to unpaid wages, meal and rest break premiums, waiting time penalties, reimbursement of business expenses, injunctive relief, or interest), the amount of attorneys' fees in controversy is at least **$451,983.21** (($760,732.83 unpaid wages + $1,047,200 wage statement penalties) x 25%).

39.    <u>Total Amount in Controversy</u>.  Assuming that Medical Solutions denied or otherwise required putative class members to work a single on-duty meal period and a single on-duty rest period in an average workweek and that putative class members are thus entitled to, on average, one additional half-hour of straight time pay per workweek, liquidated damages equal to one half-hour of straight time pay per workweek, one meal period premium per workweek, and one rest period premium per workweek; that less than half of the wage statements provided to putative class members during the year prior to the filing of the complaint contained one or more error; that all putative class members who ended an assignment with Medical Solutions during the three years prior to the filing of the Complaint who were not currently on assignment as of June 15, 2018 are entitled to waiting time penalties; and that Plaintiff can cover attorneys' fees equal to 25% of the value of her claims for unpaid wages and wage statement penalties; *and* excluding any potential amount in controversy for Plaintiff's claims for injunctive relief, unreimbursed business expenses, PAGA penalties, interest, costs, and any other

duplicative penalties or requests for relief, the amount in controversy in this lawsuit is *at a bare minimum* **$16,242,752.19.**

40.  **Venue.** Venue lies in this Court pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(c)(2).  This action was originally brought in the Superior Court of the State of California, County of Alameda, which is located within the Northern District of California.  (*See* Sbardellati Decl. ¶ 2, Ex. A.)  Therefore, the action is properly removed to this Court because it is the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

41.  **Notice of Removal**. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of Alameda, as required by 28 U.S.C. § 1446(d).

42.  In compliance with 28 U.S.C. § 1446(a), true and correct copies of all state court "process, pleadings, and orders" are attached as Exhibits A through H to the Declaration of Anthony Sbardellati.

43.  **WHEREFORE**, Medical Solutions requests that the above action pending before the Superior Court of the State of California for the County of Alameda be removed to the United States District Court for the Northern District of California.

Dated:  August 10, 2018            CONSTANGY, BROOKS, SMITH
                                   & PROPHETE, LLP

                                   By: s/Kenneth D. Sulzer _____
                                       Kenneth D. Sulzer
                                       Sarah Kroll-Rosenbaum
                                       Sayaka Karitani
                                       Anthony Sbardellati
                                       Matthew Scholl
                                       Attorneys for Defendant
                                       MEDICAL SOLUTIONS, L.L.C.