Michael R. Crosner (SBN 41299)
mike@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
J. Kirk Donnelly (SBN 179401)
kirk@crosnerlegal.com
**CROSNER LEGAL, PC**
433 N. Camden Dr., Ste. 400
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Attorneys for Plaintiff Laura Buford

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BUFORD, on behalf of herself and others similarly situated, | Case No.: 4:18-CV-04864-YGR |
| Plaintiff, | **[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT** **\*As Modified by the Court\*** |
| vs. | |
| MEDICAL SOLUTIONS, L.L.C., a Nebraska limited liability corporation; and DOES 1 through 100, inclusive. | |
| Defendants. | Date: January 14, 2020 Time: 2:00 p.m. Place: Courtroom 1, 4th Floor Hon. Yvonne Gonzalez Rogers |

# I.    RECITALS

WHEREAS, this action is pending before this Court as a putative class action and representative action under the California Private Attorneys General Act, Cal. Labor Code §§ 2698, et seq. ("PAGA");

WHEREAS, the Parties have jointly applied to this Court for Preliminary Approval of the Joint Stipulation of Settlement and Release ("Joint Stipulation"), which together with the exhibits annexed thereto, sets forth the terms and conditions for a proposed settlement and entry of judgment upon the terms and conditions set forth therein; and

WHEREAS, the Court having read and considered the Joint Stipulation, Plaintiff's unopposed Motion for Preliminary Approval of the Joint Stipulation, the Memorandum of Points and Authorities and the declarations in support thereof and the exhibits annexed thereto, and heard argument thereon, hereby finds and orders as follows.

# II.    FINDINGS

1.    That certification of the Settlement Class solely for purposes of settlement only is appropriate in that: 1) the Settlement Class Members are ascertainable and so numerous that joinder of all Class Members is impracticable; 2) the Settlement Class Members raise common questions of law and fact which predominate over individual questions; 3) Plaintiff's claims are typical of the claims of the Settlement Class Members; 4) Plaintiff and her counsel have fairly and adequately represented and protected the interests of the Settlement Class Members; and 5) a class action and class-wide resolution via class settlement procedures is superior to other available methods for the fair and efficient adjudication of the controversy.

2.    That "there is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 . . . ." *Villalobos v. Calandri Sonrise Farm LP*, CV 12-2615 PSG (JEMx), 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). *See also Delgado v. Marketsource, Inc.*, Case No. 17-CV-07370-LHK, 2019 WL 4059850, at *3 (N.D. Cal. Aug. 28, 2019) ("Because a PAGA action is brought as a proxy for law enforcement agencies, 'there is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 . . . .'" (quoting *Villalobos*, 2015 WL 12732709, at *5)).

3. That the Joint Stipulation, and the obligations of the Parties set forth therein, is fair, reasonable, and is an adequate settlement of this case in all respects, including the PAGA claims, and is in the best interests of the Settlement Class, in light of the factual, legal, practical, and procedural considerations raised by this case.

4. That, specifically, in evaluating the adequacy of the settlement, including the PAGA claims, the Court has considered whether and found that the settlement is "fair, reasonable, and adequate" under Rule 23(e), and under additional factors articulated by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). *See id.* (listing additional factors to consider when evaluating a settlement proposal including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement"); Fed. R. Civ. P. 23(e). *See also Officers for Justice v. Civil Service Comm'n of City and Cnty. Of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Delgado*, 2019 WL 4059850, at *4 ("Given the lack of an express standard, several courts, including this Court, have applied several of the factors in *Hanlon* . . . to evaluate a PAGA settlement.").

5. That, with respect to the PAGA claims, the Court finds persuasive that the California Labor & Workforce Development Agency ("LWDA") was invited to file a response to the proposed settlement agreement in this case and elected not to file any objections or opposition, and "infers LWDA's non-response [as] tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount." *Echavez v. Abercrombie & Fitch Co., Inc.*, Case No. CV 11-09754-GAF, 2017 WL 3669607, at *3 (C.D. Cal. Mar. 23, 2017); *Jennings v. Open Door Mktg.*, Case No. 15-cv-04080-KAW, 2018 WL 4773057, at *9 (N.D. Cal. Oct. 3, 2018) ("Plaintiffs submitted the settlement agreement to the LWDA, and the LWDA has not objected to the settlement."); *Jordan v. NCI Group, Inc.*, Case No. EDCV 16-1701 JVS (SPx), 2018 WL 1409590, at *3 (C.D. Cal. Jan. 5, 2018) ("Additionally, the Court finds it persuasive that the LWDA was

permitted to file a response to the proposed settlement and no comment or objection has been received.").

6. That Plaintiff Laura Buford does not have any conflicts that would preclude her from serving as Class Representative, and that her appointment comports with the requirements of due process.

7. That Counsel for Plaintiff does not have any conflicts that would preclude them from acting as Class Counsel, and that they meet the requirements of the Federal Rules of Civil Procedure and applicable law for appointment as Class Counsel and the requirements of due process.

8. That Plaintiff's proposed plan for class notice and settlement administration is the best notice practicable under the circumstances and is in full compliance with the Federal Rules of Civil Procedure, applicable law, and the requirements of due process, and that the Notice of Class Action Settlement complies with the Federal Rules of Civil Procedure, applicable law, and the requirements of due process, and is appropriate as part of the proposed plan for notice to Class Members.

## III. ORDER

**IT IS HEREBY ORDERED** as follows:

1. Pursuant to Federal Rule of Civil Procedure 23, the proposed Settlement, as embodied in the terms of the Joint Stipulation, is hereby preliminarily approved as a fair, reasonable, and adequate settlement of this case that is in the best interests of the Settlement Class Members, in light of the factual, legal, practical, and procedural considerations raised by this case. Pursuant to California Labor Code section 2699(*l*)(2), the proposed settlement of claims under PAGA with respect to both the Settlement Class and the SAG also is approved as fair, reasonable, and adequate and in furtherance of the PAGA statutes. The Joint Stipulation is incorporated by reference into this Order and is hereby preliminarily adopted as an Order of this Court.

2. Solely for the purpose of the settlement the Court hereby preliminarily and conditionally certifies the stipulated Settlement Class as defined in the Joint Stipulation. To the extent the definition of the Settlement Class differs from the class definition alleged in the First

Amended Complaint, any and all class claims not specifically included in the Joint Stipulation are hereby dismissed without prejudice.

3. Plaintiff Laura Buford is hereby preliminarily appointed as Class Representative.

4. Zachary Crosner, Michael Crosner and J. Kirk Donnelly of Crosner Legal, P.C., are preliminarily appointed as Class Counsel.

5. CPT Group, Inc. is appointed as the Claims Administrator.

6. The Parties' proposed plan for class notice and settlement administration is approved and adopted and the proposed Notice forms (Exhibits A-C to the Joint Stipulation) and Opt Out form (Exhibit D to the Joint Stipulation) are approved by the Court.

7. The Court attaches as Exhibit 1 to this Order the Joint Stipulation, which includes the (a) Notice of Class Action Settlement, (b) Notice of Class Action and PAGA Settlement, (c) Notice of PAGA Settlement, and (d) Opt-Out Form, as Exhibits A, B, C, and D, respectively.

8. On July 21, 2020 at 2:00 ~~a.m.~~/p.m. this Court will hold a Fairness Hearing to determine whether the Agreement should be finally approved as fair, reasonable, and adequate. All supporting papers, including the Plaintiff's request for attorneys' fees and costs, shall be filed no later than thirty-five (35) calendar days before the Fairness Hearing. This Court may order the Fairness Hearing be postponed, adjourned, or continued. If that occurs, the Parties will not be required to provide additional notice to the Settlement Class Members.

**IT IS SO ORDERED.**

DATED: February 14, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 1

Michael R. Crosner (Bar No. 41299)
mike@crosnerlegal.com
Zachary M. Crosner (Bar No. 272295)
zach@crosnerlegal.com
**CROSNER LEGAL, PC**
433 N. Camden Dr., Ste. 400
Beverly Hills, CA 90210
Tel: (310) 496-4818
Fax: (310) 510-6429

Attorneys for LAURA BUFORD, on behalf of herself, all
others similarly situated, and all aggrieved employees

KENNETH D. SULZER (SBN 120253)
ksulzer@constangy.com
SARAH KROLL-ROSENBAUM (SBN 272358)
skroll-rosenbaum@constangy.com
ANTHONY SBARDELLATI (SBN 246431)
asbardellati@constangy.com
MATTHEW SCHOLL (SBN 301560)
mscholl@constangy.com
**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 909-7775
Facsimile: (424) 276-7410

Attorneys for Defendant
MEDICAL SOLUTIONS, L.L.C.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA BUFORD, on behalf of herself, all others similarly situated, and all aggrieved employees, <br><br>        Plaintiff, <br><br>     vs. <br><br> MEDICAL SOLUTIONS, L.L.C., a limited liability corporation; and DOES 1 to 100, Inclusive, <br><br>        Defendants. | Case No.: 4:18-cv-04864-YGR <br><br> [Assigned to Hon. Yvonne Gonzalez Rogers, Ctrm. 1, 4th Floor] <br><br> **JOINT STIPULATION OF CLASS SETTLEMENT AND RELEASE BETWEEN PLAINTIFF AND DEFENDANT** |

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

# TABLE OF CONTENTS

I.      SUMMARY OF SETTLEMENT TERMS ........................................................... 1

II.     DEFINITIONS ......................................................................................... 2

III.    BACKGROUND ...................................................................................... 10

IV.     SETTLEMENT APPROVAL & IMPLEMENTATION PROCEDURE ...................... 11

     A.      Mutual Cooperation. ...................................................................... 11

     B.      Class Certification for Settlement Purposes Only ................................ 12

     C.      Preliminary Approval of the Settlement ............................................. 12

     D.      CAFA and LWDA Notice. ............................................................... 12

     E.      Notice, Opt-Outs, and Objections. .................................................... 12

     F.      Reports by the Claims Administrator. ................................................ 16

     G.      Motion for Final Approval. .............................................................. 17

     H.      Settlement Fairness Hearing. ........................................................... 17

V.      SETTLEMENT FUND AND SETTLEMENT AWARD CALCULATION ................... 18

     A.      Gross Settlement Amount. ............................................................... 18

     B.      Settlement Awards to Authorized Claimants; Formula. ........................ 22

     C.      Taxes. ......................................................................................... 25

VI.     RELEASES ........................................................................................... 27

VII.    FAILURE OF SETTLEMENT; IMPACT OF APPELLATE REVIEW ...................... 27

VIII.   PARTIES' AUTHORITY ........................................................................... 28

IX.     LIMITATIONS ON USE OF THIS AGREEMENT .......................................... 28

X.      MISCELLANEOUS ................................................................................. 31

This Joint Stipulation and Settlement Agreement (hereinafter "Settlement," "Agreement," or "Settlement Agreement") is entered into by and between Defendant Medical Solutions, L.L.C. ("Medical Solutions" or "Defendant"), a Delaware limited liability company, on the one hand, and Plaintiff Laura Buford ("Buford" or "Representative Plaintiff"), on behalf of herself, each member of the Settlement Class, and each member of the Settlement Aggrieved Group, on the other hand, subject to the terms and conditions hereof and the approval of the Court pursuant to Federal Rule of Civil Procedure 23 and California Labor Code § 2699(l)(2).

## I. **SUMMARY OF SETTLEMENT TERMS**

Under the terms of this Settlement, Medical Solutions will pay the Gross Settlement Amount of $1,150,000.00, without reversion, in exchange for the consideration and subject to the terms and conditions discussed herein. Authorized Claimants will not be required to make a claim to receive a Settlement Award. With the exception of employer-side payroll taxes, Defendant will not be required to pay anything more than the Gross Settlement Amount.

The Parties will seek the Court's approval of this Settlement pursuant to both Federal Rule of Civil Procedure 23 and California Labor Code § 2699(l)(2). Following entry of the Preliminary Approval Order, (1) individuals who are members of the Settlement Class, only, will be provided with a Class Notice, (2) individuals who are members of the Settlement Aggrieved Group, only, will be provided with a SAG Notice, and (3) individuals who are members of both the Settlement Class and the Settlement Aggrieved Group will be provided with a Class-SAG Notice. Further, all members of the Settlement Class—including those who are also members of the Settlement Aggrieved Group and those who are not—will be provided with an opportunity to exclude themselves from this Settlement Agreement during the Opt-Out Period. Should the Court not approve this Settlement, the Settlement Agreement shall be deemed null and void *ab initio* and of no force and effect.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

In exchange for the consideration discussed herein: (1) Representative Plaintiff agrees to a general release of any and all claims, except as expressly excluded in this Agreement, that she has against Defendant pursuant to the Personal Release contained herein; (2) the Settlement Class Members who do not opt-out of the Settlement Class release the Class Released Claims by participating in the Settlement; and (3) the members of the Settlement Aggrieved Group release the SAG Released Claims by the Settlement.

Finally, to the extent the members of the Settlement Class and Settlement Aggrieved Group worked in states other than California, any claims associated with their employment outside California are not governed by this Settlement Agreement. Additionally, nothing herein shall be construed as a release of the Dittman Reserved Claims.

## II. **DEFINITIONS**

As used in this Settlement Agreement, the following terms shall have the following meanings:

1. "Action" means the civil action titled *Buford v. Medical Solutions, L.L.C.*, pending in the Northern District of California, Case No. 4:18-cv-04864-YGR.

2. "Authorized Claimants" means all SAG Members and those Settlement Class Members who do not timely opt out of the Settlement Class.

3. "Claims Administration Costs" means the fees and costs incurred or charged by the Claims Administrator in connection with the execution of its duties under this Settlement Agreement including, but not limited to: (i) preparing, issuing, mailing and/or monitoring reports, filings, and notices; (ii) computing the amount of the Settlement Awards and any other payments to be made under this Settlement Agreement, and issuing those payments; (iii) handling inquiries about the calculation of individual Settlement Awards; (iv) establishing and operating a Settlement payment center address and phone number to receive inquiries about the Settlement; and (v)

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

preparing and issuing any tax forms required under the law and/or this Agreement, and preparing and submitting any filings required by any governmental taxing authority or other governmental agency.

4. "Claims Administrator" means ("CPT Group, Inc."), the third-party entity that Class Counsel and Defense Counsel mutually selected to process and administer the terms of this Settlement Agreement.

5. "Class Counsel" means Michael R. Crosner, Esq., J. Kirk Donnelly and Zachary M. Crosner, Esq. of Crosner Legal, P.C.

6. "Class Notice" means the notice to be sent to the individuals who are members of the Settlement Class, only, after the Court preliminarily approves the terms contained in this Agreement, informing them of the material terms of the Settlement, why they are receiving the Class Notice, and what their options are with respect to the Settlement. The proposed Class Notice is attached as Exhibit A to this Settlement Agreement.

7. "Class Notice Packet" means and includes: (a) the Opt-Out Form, (b) a pre-paid, self-addressed, return envelope, and (c) either (i) for those individuals who are members of the Settlement Class, only, the Class Notice or (ii) for those individuals who are members of both the Settlement Class and the Settlement Aggrieved Group, the Class-SAG Notice.

8. "Class Released Claims" means any and all claims to be released by the Settlement Class Members who do not opt out of the Settlement consisting of all claims that were or could have been alleged based on the facts alleged in the FAC, including, but not limited to, any corresponding Fair Labor Standards Act ("FLSA") or related Private Attorneys General Act of 2004 ("PAGA") or other similar claims under any federal, state, or local law, for the Settlement Class Period, through and including the date of preliminary approval of this Settlement, with the sole exception that the Class Released Claims expressly exclude the Dittman Reserved Claims. The release will be

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

effectuated when the Settlement Class Members cash their settlement checks.

9.    "Class-SAG Lists" means the lists to be provided to the Class Administrator, which consist of the following information as pertains to the Settlement Class Members and SAG Members: their first and last names, last-known addresses, dates of employment, social security numbers, and (a) for the Settlement Class, the number of workweeks worked during the Settlement Class Period as a Settlement Class Member and (b) for the Settlement Aggrieved Group, the number of workweeks worked during the SAG Period as a SAG Member.

10.    "Class-SAG Notice" means the notice to be sent to the individuals who are members of both the Settlement Class and the Settlement Aggrieved Group after the Court preliminarily approves the terms contained in this Agreement, informing them of the material terms of the Settlement, why they are receiving the Class-SAG Notice, and what their options are with respect to the Settlement. The proposed Class-SAG Notice is attached as Exhibit B to this Settlement Agreement.

11.    "Class/SAG Released Claims" collectively refers to the Class Released Claims and the SAG Released Claims.

12.    "Court" means the Northern District of California, in which the Action is pending, or any other Court with proper jurisdiction over this Action.

13.    "Defense Counsel" means Kenneth D. Sulzer, Esq. and Sarah Kroll-Rosenbaum, Esq. of Constangy, Brooks, Smith & Prophete, LLP.

14.    "Dittman Reserved Claims" means the claims asserted in *Dittman v. Medical Solutions, L.L.C., et al.*, Eastern District of California Case No. 2:17-cv-01851-MCE-CKD ("*Dittman*"): (1) for unpaid overtime wages; and (2) under PAGA, Business & Professions Code §§ 17200, *et seq.*, and Labor Code § 203, but only to the extent those claims are premised on the unpaid overtime claim as asserted in *Dittman*.

15.    "Effective Date" means 15 business days after the latest of: (i) the expiration of the time for filing a notice of any appeal from the Final Approval Order,

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

or (ii) the date of final affirmance of an appeal of that Final Approval Order, or (iii) the expiration of the time for a petition for review or writ of certiorari with respect to the Final Approval Order, and, if review or certiorari is granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant; or (iv) the date of final dismissal of any appeal from the Final Approval Order or the final dismissal of any proceeding on review or certiorari with respect to the Final Approval Order that has the effect of confirming the Final Approval Order.

16.     "FAC" means the First Amended Complaint, which is the operative complaint in the Action, filed by Buford on June 14, 2018.

17.     "Final Approval Date" means the date of entry of the Order granting final approval of this Settlement Agreement.

18.     "Final Approval Order" means the Order granting final approval of this Settlement.

19.     "Final Judgment" or "Judgment" means the judgment entered by the Court pursuant to the terms set forth in this Settlement Agreement, finally and fully giving effect to the terms contained herein.

20.     "Gross Settlement Amount" means the total amount of $1,150,000.00 to be paid by Defendant in full satisfaction of the Class/SAG Released Claims and all claims released by Buford pursuant to the Personal Release, and includes all individual Settlement Awards payable to the Authorized Claimants, Representative Plaintiff's Incentive Award, Class Counsel's attorneys' fees and costs, the Claims Administration Costs, and the PAGA Payments, but does not include any employer-side payroll taxes required by law.

21.     "Incentive Award" means the payment to Representative Plaintiff for her service to the Settlement Class Members and SAG Members, and in consideration for her execution of the Personal Release contained herein, which is in addition to whatever payment she is otherwise entitled to receive as an Authorized Claimant.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

22.     "Net Settlement Amount" ("NSA") means the portion of the Gross Settlement Amount after deducting Class Counsel's attorneys' fees and costs, the Incentive Award, the Claims Administration Costs, the portions of the PAGA Payments payable to the Labor and Workforce Development Agency ("LWDA"), and the $50,000 SAG Fund. The NSA will fund the Settlement Awards paid to the Authorized Claimants among the Settlement Class Members.

23.     "$50,000 SAG Fund" means the $50,000.00 portion of the PAGA Payment which will fund the Settlement Awards to the SAG Members.

24.     "Opt-Out Form" means a form by which the Settlement Class Members may seek exclusion from the Settlement Agreement. The proposed Opt-Out Form is attached as Exhibit D to this Settlement Agreement.

25.     "Opt-out Period" means the 45 calendar-day period after the mailing of the Class Notice Packets to the Settlement Class Members during which the Settlement Class Members can timely opt out of the Settlement Agreement.

26.     "PAGA Payments" means the portions of the Gross Settlement Amount the Parties have agreed to allocate to settle the claims for civil penalties under PAGA, which total $210,000.00.

27.     "Parties" means Buford and Medical Solutions, collectively.

28.     "Party" means either Buford or Medical Solutions, individually.

29.     "Personal Release" means Buford's irrevocable and unconditional release, acquittal, and discharge of the Released Parties and all persons and/or corporate entities acting through, under, on behalf of, or in concert with any of them, or any of them, from any and all Class/SAG Released Claims and any and all existing claims, demands, suits, actions, causes of action, obligations, agreements, contracts, promises, liabilities, debts, compensation, damages, losses, costs, expenses, and attorneys' fees, of any and every kind, nature or character, known or unknown, suspected or unsuspected, actual or potential, absolute or contingent, pending or anticipated, which arise out of, are based

6404500v.2
Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

upon, are by reason of, relate to, or in any way involve Buford's employment with Medical Solutions, including the termination thereof, and including, but not limited to, those arising under any federal, state, or local law, regulation or ordinance, contract, quasi-contract, the common law, public policy, or any constitution, such as, without limitation, the California Constitution; the California Labor Code, including Labor Code § 132a; Family Medical Leave Act; California Family Rights Act; Title VII of the Civil Rights Act of 1964; the California Fair Employment and Housing Act; the Private Attorneys General Act of 2004; Americans with Disabilities Act; Older Workers Benefit Protection Act; Age Discrimination in Employment Act; Consolidated Omnibus Budget Reconciliation Act of 1985; Employee Retirement Income Security Act of 1974; Civil Code § 51 *et seq.*; Wage Orders of the California Industrial Welfare Commission; the California Code of Regulations; the California Business and Professions Code; Fair Labor Standards Act; and claims of intentional infliction of emotional distress; defamation and/or libel, or any other damage to reputation claims; breach of implied contract; breach of the covenant of good faith and fair dealing, as well as any other express or implied covenant; or any other statute or common law principle of similar effect, known or unknown, which Buford now has, owns, or holds, or claims to have, own or hold, or which Buford at any time heretofore had, owned, or held, or claimed to have, own, or hold or which Buford at any time hereinafter may have, own, or hold, or claim to have, own, or hold, against each or any of the Released Parties, arising from acts, events, or circumstances occurring on or before the effective date of this Agreement. Buford acknowledges and agrees that this Agreement includes her release of claims for disputed wages pursuant to Labor Code § 206.5.

With respect to claims released in this Section, Buford expressly waives the benefits of California Civil Code § 1542. Civil Code § 1542 provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR**

7

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

**HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Notwithstanding the provisions of § 1542, and for the purpose of implementing a complete release and discharge of the claims in the Personal Release, Buford expressly acknowledges that this Agreement is intended to include in its effect all claims she does not know of or suspect to exist in her favor at the time of execution hereof and that this Agreement contemplates the extinguishment of all such claims.

30. "Preliminary Approval Motion" means the motion that will be filed by Representative Plaintiff to obtain the Court's (a) preliminary approval of this Settlement, (b) approval of the Class Notice, the Class-SAG Notice, the SAG Notice, and the Opt-Out Form, and (c) provisional certification of the Settlement Class.

31. "Preliminary Approval Order" means the order preliminarily approving this Settlement, provisionally certifying the Settlement Class, and approving the Class Notice, Class-SAG Notice, SAG Notice, and Opt-Out Form.

32. "Qualified Settlement Fund Account" means the account into which the Claims Administrator will transfer the Gross Settlement Amount pursuant to Internal Revenue Code § 1.468B-1.

33. "Released Parties" means (i) Medical Solutions; and (ii) Medical Solutions' past, present, or future subsidiaries, divisions, affiliates, predecessors, successors, and assigns, officers, directors, agents, employees, advisors, insurers, attorneys, executors, administrators, servants, owners, shareholders, bondholders, partners, and any parent or related organizations, successors in interest, and/or representatives.

34. "SAG Member(s)" means all individuals in the Settlement Aggrieved Group.

35. "SAG Notice" means the notice to be sent to the individuals who are members of the Settlement Aggrieved Group, only, after the Court preliminarily

8

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

approves the terms contained in this Agreement, informing them of the material terms of the Settlement, and why they are receiving the SAG Notice. The proposed SAG Notice is attached as Exhibit C to this Settlement Agreement.

36. "SAG Period" means the period from August 28, 2018 through the date of the Preliminary Approval Order.

37. "SAG Released Claims" means any and all claims to be released by the SAG Members, consisting of all claims for violation of PAGA, only, that were or could have been alleged based on the facts alleged in the FAC, with the sole exception that the SAG Released Claims expressly exclude claims for violation of PAGA premised upon the Dittman Reserved Claims. The release will be effectuated upon entry of the Final Approval Order.

38. "Settlement Aggrieved Group" ("SAG") consists of all persons employed by Defendant in California as non-exempt employees, including but not limited to traveling healthcare professionals, who worked an assignment at any facility other than a facility operated by Sutter Health or a related company during the SAG Period.

39. "Settlement Award" means the gross payment to any Settlement Class Member and/or SAG Member made pursuant to the terms of this Settlement Agreement.

40. "Settlement Class" consists of all persons employed by Defendant in California as non-exempt employees, including but not limited to traveling healthcare professionals, who worked an assignment at any facility operated by Sutter Health or a related company during the Settlement Class Period.

41. "Settlement Class Member(s)" means all individuals in the Settlement Class.

42. "Settlement Class Period" means the period from May 10, 2014 through the date of the Preliminary Approval Order.

43. "Settlement Fairness Hearing" or "Final Approval Hearing" means the hearing following the Opt-Out Period, at which time the Parties will request the Court

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

1  to finally and fully approve the fairness, reasonableness, and adequacy of the Settlement
2  Agreement and to enter a Final Approval Order and Final Judgment.

3  ## III.  BACKGROUND

4  Buford initiated the Action on May 10, 2018. Thereafter, on June 14, 2018,
5  Buford filed the FAC, alleging causes of action for (1) failure to provide meal periods,
6  (2) failure to authorize or permit rest periods, (3) failure to provide complete and
7  accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to
8  pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely
9  upon separation of employment, and (8) violation of PAGA, on behalf of herself and a
10  putative class of persons who have been employed by Medical Solutions in California
11  since May 10, 2014 and classified as "non-exempt." Medical Solutions removed the
12  Action to the Northern District of California on August 10, 2018 (Case No. 4:18-cv-
13  04864-YGR), where a Scheduling Conference was conducted on January 7, 2019.

14  Since January 2019, the Parties have engaged in discovery, and exchanged
15  written responses and documents related to issues of class certification, the merits of
16  the claims set forth in the FAC, and potential exposure. In July and August 2019, the
17  Parties engaged in efforts to mediate the Action. On August 28, 2019, the Parties
18  participated in a full day mediation before the Honorable Jay Gandhi (Ret.), which
19  resulted in an executed Memorandum of Understanding laying out, in summary terms,
20  the present Settlement Agreement between the Parties.

21  Class Counsel has investigated the facts relating to the claims alleged in the
22  Action, and analyzed the legal principles applicable to those claims. Based upon Class
23  Counsel's discovery, investigation, and legal evaluation, and taking into account the
24  sharply contested legal and factual issues involved, Class Counsel's assessment of the
25  uncertainties of complex litigation, and the relative benefits conferred upon the
26  Settlement Class and Settlement Aggrieved Group pursuant to this Settlement
27  Agreement, Class Counsel has concluded that a settlement with Medical Solutions on

28

JOINT STIPULATION AND SETTLEMENT AGREEMENT

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

the terms set forth in this Agreement is fair, reasonable, adequate, and in the best interests of Buford, the Settlement Class, and the Settlement Aggrieved Group. In particular, Class Counsel and Buford understand the risks of the arguments and defenses asserted by Medical Solutions in the Action.

Medical Solutions denied, and continues to deny, the allegations in the Action in their entirety and any and all liability arising out of the conduct alleged in the FAC. Medical Solutions also denies that, if the case were to proceed, any class could be certified. Medical Solutions has asserted defenses to the claims alleged in the Action, has always maintained that Medical Solutions complied at all times with the California Labor Code, the California Business and Professions Code, and the Fair Labor Standards Act, and further maintains that Buford, the Settlement Class Members, and the SAG Members have been properly paid all wages and all other payments owed to them under applicable federal and state law.

Nevertheless, Medical Solutions has concluded that further defense of this Action would likely be protracted and expensive. Substantial amounts of Medical Solutions' time, energy, and resources have already been expended, and absent this Settlement, will continue to be expended in defense of the claims asserted in this Action. Medical Solutions has therefore agreed to settle in the manner and upon the terms described in this Agreement to put to rest the claims set forth in the Action.

The Parties and their counsel specifically agree that Medical Solutions' agreement to settle this matter is not, and shall not be construed as, an admission of any wrongdoing whatsoever by Medical Solutions.

## IV. SETTLEMENT APPROVAL & IMPLEMENTATION PROCEDURE

### A. Mutual Cooperation.

The Parties agree to cooperate fully with each other to accomplish the terms and requirements of this Settlement Agreement, including the execution of such documents

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

and the taking of such other action as may be necessary to implement the terms of this Agreement.

**B.    Class Certification for Settlement Purposes Only.**

For settlement purposes only, the Parties agree that the requisites for establishing class certification with respect to the Settlement Class are met, and that the Settlement Class may be certified. If the Settlement fails to be approved or otherwise fails to be consummated for any reason whatsoever, then Defendant retains all rights previously available to it, and any provisional certification of any class, or the adoption of any procedure herein, shall be undone and the Parties restored to their pre-Settlement status.

**C.    Preliminary Approval of the Settlement.**

Within 60 calendar days of signing this Settlement Agreement, Buford will file the Preliminary Approval Motion, including such papers, pleadings, and evidence as may be required for the Court to: (1) with respect to the Settlement Class, determine that this Agreement is fair, adequate, and reasonable, per Fed. R. Civ. P. 23; and (2) with respect to the Settlement Aggrieved Group, approve this Agreement per California Labor Code § 2699(l)(2). Such submissions will also include the proposed Class Notice, Class-SAG Notice, SAG Notice, and Opt-Out Form attached hereto as Exhibits A through D, for the Court to approve. Defense Counsel shall have a reasonable opportunity to review and comment on that motion before it is filed.

**D.    CAFA and LWDA Notice.**

Within 10 calendar days of Buford filing the Preliminary Approval Motion, Medical Solutions will serve notice of this Settlement as required by 28 U.S.C. § 1715. Simultaneously with filing the Preliminary Approval Motion, Class Counsel will submit a copy of this Settlement to the LWDA as required by Labor Code § 2699(l)(2).

**E.    Notice, Opt-Outs, and Objections.**

Subject to the approval of the Court, notice of the Settlement Agreement shall be provided to the members of the Settlement Class and the Settlement Aggrieved Group

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

as follows: (a) individuals who are members of the Settlement Class, only, will be provided notice in the form of the proposed Class Notice attached hereto as Exhibit A; (b) individuals who are members of both the Settlement Class and the Settlement Aggrieved Group will be provided notice in the form of the proposed Class-SAG Notice attached hereto as Exhibit B; and (c) individuals who are members of the Settlement Aggrieved Group, only, will be provided notice in the form of the proposed SAG Notice attached hereto as Exhibit C. The Parties believe and agree that the following proposed procedures will provide the best practicable notice to the Settlement Class and the Settlement Aggrieved Group:

1.     No later than 20 business days after the date of the entry of the Preliminary Approval Order, Medical Solutions shall provide the Class-SAG Lists to the Claims Administrator.

2.     Neither Medical Solutions nor the Claims Administrator shall provide the identification of Settlement Class Members or SAG Members to the Representative Plaintiff, Class Counsel, any other Settlement Class Member, any other SAG Member, or to any other person or entity. However, before the Claims Administrator provides notice to the Settlement Class Members and SAG Members as outlined below, it will advise the Parties of the total number of Settlement Class Members, the total number of SAG Members, and the total number of workweeks on the Class-SAG Lists.

3.     If Medical Solutions and the Claims Administrator determine, based upon further review of available data, that a person previously identified as being a Settlement Class Member and/or SAG Member should not be so included, or if they identify a person who should have been included as a Settlement Class Member and/or SAG Member but was not so included, Medical Solutions and the Claims Administrator shall promptly delete or add such person as appropriate and immediately notify Class Counsel prior to such deletions or additions (and the reasons therefore).

JOINT STIPULATION AND SETTLEMENT AGREEMENT

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

4. After receipt of the Class-SAG Lists and prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes.

5. No later than 30 business days after the date of entry of the Preliminary Approval Order, the Claims Administrator shall send the Class Notice Packet (containing either the Class Notice or the Class-SAG Notice, as appropriate) to all Settlement Class Members via first-class mail, postage prepaid, using the most current mailing address information available as contained in the Class-SAG Lists, or as updated following the NCOA search. Additionally, and also not later than 30 business days after the date of entry of the Preliminary Approval Order, the Claims Administrator shall send the SAG Notice to those individuals who are members of the Settlement Aggrieved Group, only, via first-class mail, postage prepaid, using the most current mailing address information available as contained in the Class-SAG Lists, or as updated following the NCOA search.

5. Any Class Notice Packets and/or SAG Notices returned to the Claims Administrator as non-delivered before the expiration of the Opt-Out Period shall be sent to the forwarding addresses affixed thereto. If no forwarding address is provided for a Class Notice Packet and/or SAG Notice that is returned as non-delivered, then such Class Notice Packet and/or SAG Notice will be re-sent by the Claims Administrator after the address is updated using customary skip-trace procedures based on the individual's social security number and other available data, including address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records, and credit bureaus. Undelivered Class Notice Packets and/or SAG Notices will be re-sent within 5 business days after the Claims Administrator receives notice that the Class Notice Packet and/or SAG Notice was undeliverable.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

6. The objection deadline shall not be extended for members of the Settlement Class whose original notices are re-mailed pursuant to paragraph IV.E.5.

7. Other than the obligations set forth in this Settlement Agreement, Buford, Class Counsel, Medical Solutions, Defense Counsel, and the Claims Administrator shall have no additional obligation to identify or locate any Settlement Class Members or SAG Members, or have any liability in connection with the provision of information to the Claims Administrator or otherwise.

8. <u>Requests for Exclusion/Opt Outs</u>. The Class Notice and the Class-SAG Notice shall provide that Settlement Class Members who wish to exclude themselves from the Settlement Agreement must return an Opt-Out Form to the Claims Administrator by mail, postmarked on or before the expiration of the Opt-Out Period. Such written request for exclusion must contain all of the information requested on the Opt-Out Form. The Opt-Out Form must be personally signed by the Settlement Class Member who seeks to opt out. No opt-out request may be made on behalf of more than one Settlement Class Member. The postmark date of the mailing envelope shall be the exclusive means used to determine whether an Opt-Out Form has been timely submitted and the Claims Administrator shall have the sole power to determine timeliness or validity of an opt-out, but may confer with counsel for the Parties in reaching that determination. Any Settlement Class Member who opts out of the Settlement Agreement will not be entitled to any Settlement Award attributable to his or her membership in the Settlement Class; however, such individuals will still be entitled to Settlement Awards attributable to their membership in the Settlement Aggrieved Group, if applicable. Further, any Settlement Class Member who opts out of the Settlement Agreement will not be bound by the Settlement Agreement, except with regard to those terms of the Settlement Agreement affecting such individuals' rights and obligations as SAG Members, if applicable. Lastly, any Settlement Class Member who opts out of the

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Settlement Agreement will not have any right to object, appeal, or comment on the terms of this Settlement Agreement.

9.      Objections to Settlement. The Class Notice and the Class-SAG Notice shall state that those Settlement Class Members who wish to object to the Settlement Agreement should submit a written statement of objection on or before the expiration of the Opt-Out Period to the Court. The Notice of Objection should include the case name, case number, and the basis for the objection. Regardless of whether a Settlement Class Member has complied with this procedure, he or she will be permitted to speak to the Court at the Settlement Fairness Hearing.

10.     No Encouragement of Objections, Opt-Outs, or Appeals. At no time shall any of the Parties or their counsel seek to solicit or encourage members of the Settlement Class to opt-out, or to appeal from the Final Approval Order and Final Judgment.

11.     Right to Rescission In Event of Excess Opt-Outs. Notwithstanding any other provision of this Settlement Agreement, Medical Solutions shall retain the right, in the exercise of its sole discretion, to nullify the Settlement Agreement within 10 business days of receipt of the Opt-Out Report as detailed in paragraph IV.F.2., below, if more than 5% of Settlement Class Members opt out of the Settlement Agreement pursuant to paragraph IV.E.8., above. In the event of such a rescission, no Party may use the fact that any Party agreed to settle this case as evidence of Medical Solutions' liability in this lawsuit or the lack thereof, or that class certification is proper for any purpose other than settlement. If Medical Solutions exercises its right to rescission under this paragraph, it shall bear all settlement administration costs incurred through the date of rescission.

F.      **Reports by the Claims Administrator.**

1.      Weekly Reports. Starting on the date that the Claims Administrator receives the Class-SAG Lists, the Claims Administrator shall provide weekly reports to counsel for the Parties detailing the progress of the claims process outlined herein.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

2.    Opt-Out Report by the Claims Administrator. No later than 10 business days after the Opt-Out Period expires, the Claims Administrator shall provide counsel for the Parties with a declaration setting forth: (a) due diligence and proof of mailing of the Class Notice Packets and the SAG Notice; (b) the total amounts to be paid to the Settlement Class and the Settlement Aggrieved Group; and (c) the total number of Settlement Class Members who timely mailed Opt-Out Forms or objections to the Settlement Agreement ("Opt-Out Report"), along with the complete copies of all Opt-Out Forms and objections received, including the postmark dates for each. The Parties may challenge the validity of any returned Opt-Out Form and the Claims Administrator will be the sole arbiter of its validity.

## G.    Motion for Final Approval.

Buford will file with the Court a motion for final approval of this Settlement no later than 35 calendar days before the date of the Settlement Fairness Hearing, which will be set by the Court.

## H.    Settlement Fairness Hearing.

After expiration of the Opt-Out Period, the Court shall conduct a Settlement Fairness Hearing to determine final approval of the Settlement Agreement along with the amounts properly payable for: (i) Class Counsel's attorneys' fees and costs; (ii) the Incentive Award to Buford; (iii) Claims Administration Costs; and (iv) the PAGA Payments. Upon final approval of the Settlement Agreement by the Court at or after the Settlement Fairness Hearing, the Parties shall present a final order to the Court for its approval and entry. After entry of the Final Approval Order, the Court shall have continuing jurisdiction over the Action for purposes of addressing: (i) settlement administration matters; (ii) such post-Final Approval Order matters as may be appropriate under Court rules or as set forth in this Settlement Agreement; and (iii) ruling on the stipulated request for Final Judgment of the entire Action when all aspects of the Settlement Agreement have been consummated. Within 10 calendar days of entry

of the Final Approval Order, Class Counsel will submit a copy thereof to the LWDA as required by Labor Code § 2699(l)(3).

## V. **SETTLEMENT FUND AND SETTLEMENT AWARD CALCULATION**

### A. **Gross Settlement Amount.**

1. Medical Solutions shall pay the Gross Settlement Amount of $1,150,000.00 to settle this Action. In no event shall the Gross Settlement Amount exceed that sum. The Gross Settlement Amount is based in part on the following:

    a. Settlement Class: 18,084 workweeks and 774 potential Settlement Class Members with an average base rate of pay of $20.95 per hour from May 10, 2014 through July 17, 2019, assuming a pro rata increase through the end date of the Settlement Class Period and a 10% margin of error. If the margin of error is beyond 10%, the Parties will meet and confer to shorten or lengthen the Settlement Class Period to accommodate settlement as a first option.

    b. Settlement Aggrieved Group: 23,560 workweeks and 1,333 potential SAG Members from August 28, 2018 through July 17, 2019, assuming a pro rata increase through the end date of the SAG Period and a 10% margin of error. If the margin of error is beyond 10%, the Parties will meet and confer to shorten or lengthen the SAG Period to accommodate settlement as a first option.

2. _Deposit_. Ten business days after the Effective Date, Medical Solutions shall deliver via wire transfer to the Claims Administrator the Gross Settlement Amount plus its share of employer-side payroll taxes. Immediately upon receipt by the Claims Administrator, these funds shall be transferred into a Qualified Settlement Fund Account. No Party shall have any further obligation for any payment under this Settlement Agreement to Buford, the Settlement Class Members, the SAG Members, Class Counsel, or the Claims Administrator.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

3.  <u>Disbursement by Claims Administrator.</u> All disbursements hereunder shall be made from the Qualified Settlement Fund Account, and only the Claims Administrator shall be authorized to make withdrawals or payments from that account.

4.  <u>Payroll Taxes</u>. The Gross Settlement Amount will not cover Medical Solutions' share of employer-side payroll taxes on the Settlement Awards paid to the Authorized Claimants. Such taxes shall be borne by Medical Solutions, exclusive of the Gross Settlement Amount.

5.  <u>Payments from the Gross Settlement Amount</u>. Subject to Court approval and for purposes of effectuating this Settlement Agreement, the following amounts shall be paid by the Claims Administrator from the Gross Settlement Amount:

a.  <u>Incentive Award:</u> Subject to Court approval, in exchange for Buford's release of all claims in the Personal Release and covenant not to sue (as described below), and in addition to her individual Settlement Award as an Authorized Claimant, $7,500.00 will be paid to Buford as an Incentive Award for her efforts in bringing and prosecuting this matter. The Qualified Settlement Fund Account shall issue an IRS Form 1099 for this payment. The Claims Administrator shall pay the Incentive Award approved by the Court within 10 business days after deposit of the Gross Settlement Amount by Medical Solutions. Any amounts not approved by the Court as an Incentive Award up to the amount set forth in this paragraph shall be added back to the NSA. As part of her consideration for the Incentive Award, Buford covenants and agrees not to assert any claim released by the Personal Release, or to commence, join in, or voluntarily assist in a lawsuit or adversary proceeding against the Released Parties, or any of them, arising out of or regarding the claims released by the Personal Release.

b.  <u>Class Counsel Attorneys' Fees and Costs:</u> Class Counsel shall make a

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

motion for reasonable attorneys' fees and costs incurred in the Action, which shall be heard concurrently with the motion for final approval of the settlement. The attorneys' fees requested by Class Counsel shall not exceed 25% of the Gross Settlement Amount, or $287,500.00. This amount will compensate Class Counsel for work already performed and all remaining work to be performed in the Action. Class Counsel's separate request for reimbursement of costs shall not exceed $15,000.00.

i.  Medical Solutions and its attorneys agree not to oppose any application or motion by Class Counsel for their attorneys' fees and costs up to the sums set forth herein, so long as any such application or motion is consistent with the provisions of this Settlement Agreement, and Class Counsel agrees not to petition the Court for any additional payments for fees, costs, or interest.

ii. The Claims Administrator shall pay the attorneys' fees and costs approved by the Court from the Gross Settlement Amount within 10 business days after its deposit. Any amounts not approved by the Court in attorneys' fees and costs, up to the amounts set forth herein, shall be added back to the NSA.

iii. The attorneys' fees and costs approved by the Court shall constitute full satisfaction of Medical Solutions' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees, expenses, or costs incurred in this Action on behalf of Buford, the Settlement Class, and/or the Settlement Aggrieved Group, and shall relieve Medical Solutions from any other claims or liability to any other attorney or law firm for any attorneys' fees, expenses, and/or costs to which any of them may claim to be entitled on behalf of Buford, the Settlement Class, and/or the Settlement Aggrieved Group.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Buford further agrees that any allocation of fees between or among Class Counsel and any other attorney representing a plaintiff, the Settlement Class, and/or the Settlement Aggrieved Group shall be the sole responsibility of Class Counsel, and Buford agrees to hold harmless Medical Solutions from any claim by any other individual, entity, or other third party seeking any additional attorneys' fees or costs.

    iv. An IRS Form 1099 shall be provided to Class Counsel for the payments made to Class Counsel. Class Counsel shall be solely responsible to pay any and all applicable taxes on the payments made to Class Counsel. Medical Solutions makes no representations or warranties regarding the tax consequences resulting from any payments made to Class Counsel. Class Counsel agrees to hold harmless Medical Solutions, the Claims Administrator, and the Qualified Settlement Fund Account from any claim or liability for taxes, penalties, or interest for which Class Counsel is responsible as a result of the payment made to Class Counsel.

c. <u>Claims Administration Costs:</u> All Claims Administration Costs shall be paid from the Gross Settlement Amount in an amount not to exceed $25,000.00. Any amounts not approved by the Court in Claims Administration Costs, up to the amount set forth in this paragraph, shall be added back to the NSA. The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the Claims Administration Costs. The Claims Administrator shall pay itself the Claims Administration Costs approved by the Court within 10 business days after the deposit of the Gross Settlement Amount.

d. <u>PAGA Payments:</u> The PAGA Payments shall total $210,000.00, allocated

JOINT STIPULATION AND SETTLEMENT AGREEMENT

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

between the Settlement Class and Settlement Aggrieved Group as follows:

    i. Settlement Class: $10,000.00, of which 75% or $7,500.00 shall be paid to the LWDA within 10 business days after the deposit of the Gross Settlement Amount. The remaining 25% or $2,500.00 shall be added back to the NSA.

    ii. Settlement Aggrieved Group: $200,000.00, of which 75% or $150,000.00 shall be paid to the LWDA within 10 business days after the deposit of the Gross Settlement Amount. The remaining 25% or $50,000.00 shall be distributed to the SAG Members according to the formula described in paragraph V.B.1.b., below.

**B.**   **<u>Settlement Awards to Authorized Claimants; Formula.</u>**

    1.   Solely for purposes of effectuating this Settlement Agreement and in exchange for the release of the Class/SAG Released Claims, Authorized Claimants shall be paid a Settlement Award as follows:

    a. The Settlement Award to the Settlement Class Members shall be paid from the NSA in the amount(s) calculated as follows: Each Settlement Class Member (excluding those who validly opt-out) will be paid a pro rata share of the NSA based on the number of weeks he or she worked for Medical Solutions during the Settlement Class Period as a Settlement Class Member (at facilities operated by Sutter Health), divided by the total number of workweeks worked by all Settlement Class Members (excluding those who validly opt-out) during the Settlement Class Period (at facilities operated by Sutter Health). Each of the amounts in this section is subject to change depending on the final tally of Authorized Claimants.

    b. The Settlement Award to the SAG Members shall be paid from the $50,000 SAG Fund in the amount(s) calculated as follows: Each SAG

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Member will be paid a pro rata share of the $50,000 SAG Fund based on the number of weeks he or she worked for Medical Solutions during the SAG Period as an SAG Member (at facilities other than those operated by Sutter Health), divided by the total number of workweeks worked by all SAG Members during the SAG Period (at facilities other than those operated by Sutter Health).

2.     The Claims Administrator shall be responsible for determining eligibility for, and the amount of, the Settlement Awards to be paid to the Authorized Claimants. Settlement Awards shall be paid to Authorized Claimants no later than 10 business days after the deposit of the Gross Settlement Amount.

3.     The Settlement Awards shall be treated by all Parties as follows:

    a.     The Settlement Awards paid to the Authorized Claimants within the Settlement Class shall be treated as two-thirds non-wage penalties and interest, to be reported to the Authorized Claimant on an IRS Form 1099 and shall not be subject to withholdings, and one-third wages, subject to withholdings, to be reported to the Authorized Claimant on an IRS Form W-2.

    b.     The Settlement Awards to the Authorized Claimants within the Settlement Aggrieved Group shall be treated as two-thirds non-wage penalties and one-third interest, to be reported to the Authorized Claimants on an IRS Form 1099, and shall not be subject to withholdings.

4.     Authorized Claimants shall be solely and legally responsible to pay any and all applicable taxes on the payments made to them. Medical Solutions makes no representations or warranties regarding the tax consequences or obligations resulting from any payments made to Authorized Claimants.

5.     All eligibility and Settlement Award determinations shall be based on personnel and payroll data that Medical Solutions will make available as needed to the

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Claims Administrator. Settlement Class Members and SAG Members shall have an opportunity to dispute the personnel and payroll information as reflected in the Class Notice, Class-SAG Notice, or SAG Notice, as appropriate. The Claims Administrator shall have the sole authority to resolve any such disputes, and may consult with Class Counsel and Defense Counsel in doing so. Any Settlement Awards that are undeliverable to Authorized Claimants shall be distributed to the State of California Controller Unclaimed Property Fund ("UPF").

6. All checks for Settlement Awards shall remain valid and negotiable for 180 days from the date of their issuance. The Claims Administrator will include with the checks a letter stating that the check must be cashed or deposited within 180 days. The funds represented by Settlement Award checks returned as undeliverable and those Settlement Award checks remaining un-cashed for more than 180 days after issuance shall be retained by the Claims Administrator. Any amounts from settlement checks that remain uncashed and otherwise unclaimed shall be paid to the UPF.

7. The aggregate amount of the Settlement Awards paid to Authorized Claimants within the Settlement Class shall not under any circumstances exceed the NSA, and the aggregate amount of the Settlement Awards paid to Authorized Claimants within the Settlement Aggrieved Group shall not under any circumstances exceed the $50,000 SAG Fund.

8. Any Settlement Class Member who accepts any payment pursuant to the Settlement will be deemed to have opted in to the Settlement Class for purposes of the FLSA and to have waived and released any FLSA claim and all other claims as set forth in the Class Released Claims. There shall be language included on the back of the check that states the following:

For payments to Authorized Claimants within the Settlement Class:

By endorsing this check, I hereby consent to join the Action entitled *Buford v. Medical Solutions, L.L.C.*, Case No. 4:18-cv-04864-YGR, in the Northern District of California, and to

JOINT STIPULATION AND SETTLEMENT AGREEMENT

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

release all FLSA claims arising from the factual allegations in the First Amended Complaint, for the Settlement Class Period. By participating in this Settlement and not having previously opted out, I also understand that I have already released all other Class Released Claims that were asserted or that could have been asserted in this Action, including the Class Released Claims described in the Class Notice mailed to me pursuant to the Settlement Agreement.

For payments to Authorized Claimants within the Settlement Aggrieved Group:

Paid pursuant to the court approved Settlement in *Buford v. Medical Solutions, L.L.C.*, Case No. 4:18-cv-04864-YGR, Northern District of California.

## C.    Taxes.

1.    Withholding and Reporting Requirements. The Claims Administrator shall be responsible for ensuring that all taxes associated with this Settlement Agreement are timely paid to the appropriate tax authorities. The Claims Administrator's responsibilities include the following: (i) filing all federal, state, and local tax deductions; (ii) timely and proper filing of all required federal, state and local forms with the appropriate taxing authorities; and (iii) completing any other steps necessary for compliance with any tax obligations of the Settlement under federal, state, and/or local law, as applicable. To verify the Claims Administrator's compliance with the foregoing withholding and reporting requirements, as soon as administratively practicable, the Claims Administrator shall furnish Class Counsel and Defense Counsel with copies of all forms detailing the payment of taxes sufficient to prove that such payments were properly remitted. The Claims Administrator shall provide a final accounting declaration adequate to demonstrate full compliance with all duties set forth in this Settlement Agreement, including, but not limited to, tax withholding, payment, and reporting obligations.

2.    Determination and Payment of Taxes. The Claims Administrator shall determine the amount of any taxes to be withheld from each Authorized Claimant's

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Settlement Award and issue the appropriate IRS Forms to the Authorized Claimant. All such withholdings shall be remitted by the Claims Administrator to the proper governmental taxing authorities. Each Authorized Claimant shall be responsible for any tax consequences of any funds paid out to him or her pursuant to this Settlement Agreement.

3.     Circular 230 Disclaimer. Each Party to this Settlement Agreement (for purposes of this paragraph, only, referred to as the "Acknowledging Party"; and each Party to this Settlement Agreement other than the Acknowledging Party, an "Other Party") acknowledges and agrees that (1) no provision of this Settlement Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisors, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended); (2) the Acknowledging Party (a) has relied exclusively upon his, her, or its own, independent legal and tax advisers for advice (including tax advice) in connection with this Settlement Agreement, (b) has not entered into this Settlement Agreement based upon the recommendation of any Other Party or any attorney or advisor to any Other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any Other Party to avoid any tax penalty that may be imposed on the Acknowledging Party; and (3) no attorney or adviser to any Other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the Acknowledging Party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Settlement Agreement.

4.     Completion of and Report on Settlement Administration. Administration of the Settlement Agreement shall be completed on or before the eleventh business day after the deposit of the Gross Settlement Amount. Upon completion of administration

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

of the Settlement Agreement, the Claims Administrator shall provide written certification of such completion and provide proof of payment at the request of the Court and/or counsel for the Parties. The Claims Administrator shall also furnish counsel for the Parties with a report showing the amounts and dates of each payment.

## VI. RELEASES

Pursuant to this Settlement, Representative Plaintiff, the Settlement Class Members who do not timely and validly opt-out of this Settlement, the SAG Members, and all persons purporting to act on their behalf or purporting to assert a claim under or through them, including, but not limited to their spouses, dependents, attorneys, heirs and assigns, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, and successors-in-interest, whether individual, class, collective, representative, legal, equitable, direct or indirect, or any other type or in any other capacity fully, finally, and forever settle, compromise, and discharge the Released Parties of the Class/SAG Released Claims and, for the Representative Plaintiff, of the claims in the Personal Release. Upon the final approval by the Court of this Settlement Agreement and by operation of the Agreement's terms, and except as to such rights or claims as may be created by this Agreement:

    a. All Settlement Class Members who do not timely and validly opt-out of this Settlement fully release and forever discharge the Released Parties from all Class Released Claims during the Settlement Class Period.

    b. All SAG Members fully release and forever discharge the Released Parties from all SAG Released Claims during the SAG Period.

## VII. FAILURE OF SETTLEMENT; IMPACT OF APPELLATE REVIEW

A. <u>Invalid without Court Approval</u>. In the event this Settlement Agreement is not approved by the Court, it shall be deemed null and void, of no force and effect, and of no probative or evidentiary value, and the Parties hereto represent, warrant, and covenant that it will not be used or referred to for any purpose whatsoever.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

B. **Effect of Revocation or Failure of Settlement**. In the event that the Settlement does not become final for any reason, this Agreement shall be null and void and any order entered by the Court in furtherance thereof shall be treated as void *ab initio*. In such a case, the Parties shall return to the status quo as if they had not entered into this Settlement Agreement. The Claims Administrator will be paid by Medical Solutions for its costs through the date it is notified that the Settlement will not proceed.

C. **Impact of Appellate Review**. In the event an appeal is filed from any of the Court's Orders, or any other appellate review is sought prior to the Effective Date, administration of the Settlement Agreement shall be stayed pending final resolution of the appeal or other appellate review.

## VIII. PARTIES' AUTHORITY

A. **Authority**. The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties to its terms and conditions.

B. **No Signature Required by Settlement Class Members or SAG Members on Settlement Agreement**. Because the Settlement Class Members and SAG Members are numerous, it is impossible or impractical to have each one execute this Agreement. The Class Notice will advise all Settlement Class Members and SAG Members of the binding nature of the releases herein, and shall have the same force and effect as if this Settlement Agreement were executed by each of them.

## IX. LIMITATIONS ON USE OF THIS AGREEMENT

A. **No Admission of Liability or Wrongdoing**. Medical Solutions denies any and all claims alleged in the FAC and denies all wrongdoing and liability whatsoever. Medical Solutions maintains, among other things, that it has complied at all times with the California Labor Code, and all applicable California and federal law. This Settlement Agreement is not a concession or admission, and shall not be used against Medical Solutions as an admission or indication with respect to any claim of any fault, concession, or omission by Medical Solutions. Whether or not the Settlement

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

Agreement is finally approved, neither the Agreement, nor any document, statement, proceeding or conduct related to this Agreement, nor any reports or accounts thereof, shall in any event be: (i) construed, offered, or admitted in evidence as, received as, or deemed to be, evidence for any purpose, including, but not limited to, evidence of a presumption, concession, indication or admission by Medical Solutions of any liability, fault, wrongdoing, omission, concession, or damage; or (ii) disclosed or referred to for any purpose, or offered or received in evidence in any further proceeding in this lawsuit, or any other civil, criminal, or administrative action or proceeding against Medical Solutions except for purposes of settling the Action pursuant to this Agreement and for obtaining preliminary and final approval thereof. The limitations set forth in this paragraph do not apply to any use of this Agreement by the Parties to enforce this Settlement following final approval by the Court.

B.     No Impact on Employee Benefit Plan, Policy or Bonus Program. Medical Solutions states that the amounts paid under this Settlement Agreement will not affect any previously credited hours of service under any employee benefit plan, policy, or bonus program sponsored by Medical Solutions. To the extent permitted by the terms of any plan as exists at the time of the payment, the amounts paid under this Agreement will not form the basis for additional contributions to, benefits under, or any other monetary entitlement under any Medical Solutions employee benefit plans, policies, or bonus programs. Any payments made under the terms of this Agreement shall not be applied retroactively, currently, or on a going forward basis as salary, earnings, wages, bonuses, commissions, or any other form of compensation for the purposes of any Medical Solutions employee benefit plan, policy, or bonus program. Medical Solutions retains the right to modify the language of its employee benefit plans, policies, and bonus programs to effect this intent and to make clear that any amounts paid pursuant to this Agreement are not for "hours worked," "hours paid," "hours of service," or any similar measuring term as defined by applicable plans, policies, and bonus programs for

JOINT STIPULATION AND SETTLEMENT AGREEMENT

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

the purpose of eligibility, vesting, benefit accrual or any other purpose, and that additional contributions or benefits are not required by this Agreement. Neither Medical Solutions nor Buford are opining on the terms of any such plan.

C. <u>No Publicity</u>. Neither the Parties nor their counsel, without the prior written approval of counsel for the other Party (which may be withheld in a Party's sole discretion), shall issue, authorize, or contribute to the preparation or dissemination of any press release or any other public statement or advertisement concerning this Agreement or any of its terms, or sponsor or participate in any press conference, interview, media appearance, or other public discussion concerning this Agreement or any of its terms. If the Parties or their counsel are contacted by the press, media or any industry association, they will respond only that the Action has been amicably resolved to the Parties' mutual satisfaction. Any violation of this provision by Buford or Class Counsel shall entitle Medical Solutions to nullify the Settlement Agreement at any time before entry of the Final Approval Order. The Parties agree that, in the event of a breach of this provision, the non-breaching Party shall be entitled to reasonable attorneys' fees and costs incurred as a result of that breach. The foregoing does not limit Medical Solutions' right to enforce this provision through an action for injunctive relief.

D. <u>Various Proceedings Stayed</u>. The Parties agree to stay all proceedings in the Action, except those proceedings necessary to implement and complete the Settlement, pending the Settlement Fairness Hearing to be conducted by the Court.

E. <u>Use of Medical Solutions' Data and Documents</u>. Buford and Class Counsel agree that none of the documents provided to them by Medical Solutions during the Action shall be used for any purpose other than the Settlement of this Action. Furthermore, should Buford or Class Counsel possess any originals or copies of Medical Solutions' documents, they agree to destroy or return such originals and copies upon the Effective Date of the Settlement Agreement.

6404500v.2
Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

# X. **MISCELLANEOUS**

A. <u>No Assignment of Rights</u>. Buford warrants and represents that she has not assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate to any person or entity any of the claims in the Personal Release or any rights, claims, or causes of action arising out of those claims. This warranty and representation of non-assignment shall survive the execution of this Settlement Agreement and entry of Final Judgment in the Action. No Settlement Award shall be paid to any person or entity with respect to whom Buford has assigned, transferred, or hypothecated, or purported to assign, transfer, or hypothecate, any of the claims in the Personal Release or any rights, claims, or causes of action arising out of those claims. In addition, Buford shall defend, hold harmless, and indemnify the Released Parties, or any of them, from and against any claims, damages, litigation, causes of action, and expenses, including reasonable attorneys' fees, resulting from any breach by Buford of this warranty and representation, or any breach by Buford of her release of claims in the Personal Release.

B. <u>Construction</u>. The Parties hereto agree that the terms and conditions of this Settlement Agreement are the result of lengthy, intensive arms-length negotiations between the Parties, and that this Agreement shall not be construed in favor of or against any Party by reason of the extent to which any Party or his, her, or its counsel participated in the drafting of this Settlement Agreement.

C. <u>Captions and Interpretations</u>. Paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or any provision hereof. Each term of this Settlement Agreement is contractual and not merely a recital.

D. <u>Modification</u>. This Settlement Agreement may not be changed, altered, or modified, except in a writing signed by the Parties hereto and approved by the Court. This Settlement Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

E.     Integration Clause. This Settlement Agreement, along with its exhibit, constitutes the entire agreement between the Parties relating to the Settlement and transaction contemplated hereby, and the final, complete and exclusive expression of the terms and conditions of their Agreement. Any and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or such Party's legal counsel, are hereby superseded and merged herein. No rights hereunder may be waived except in writing.

F.     Binding on Assigns. This Settlement Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors, and assigns.

G.     Enforcement. The Parties agree that following entry of the Final Judgment, this Settlement Agreement shall be enforceable by the Court and the Court shall retain exclusive and continuing jurisdiction of this Action over all Parties, the Settlement Class Members (excluding those who validly opt out), and the SAG Members to interpret and enforce the terms, conditions, and obligations of the Settlement Agreement. This Agreement may be pleaded or asserted by or on behalf of Medical Solutions as a defense and complete bar to any action or claim that may be brought against or involve Medical Solutions by anyone acting or purporting to act on behalf of Buford, the Settlement Class Members (excluding those who validly opt out), and/or the SAG Members with respect to any matters within the scope of this Settlement Agreement and excepting only the obligations of the Parties under this Settlement Agreement.

H.     Counterparts. This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

be binding upon and effective as to all Parties. This Settlement Agreement will become effective on the date when the last person signs and dates it.

I.   <u>Governing Law</u>. All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of California and the United States of America, where applicable.

| DATED: December <u>9</u>, 2019 | *Laura Buford* |
|---|---|
| | LAURA BUFORD, for herself, the Settlement Class, and the Settlement Aggrieved Group |

| DATED: December ___, 2019 | |
|---|---|
| | STEPHEN PEDERSEN, General Counsel, on behalf of Medical Solutions, L.L.C. |

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

be binding upon and effective as to all Parties. This Settlement Agreement will become effective on the date when the last person signs and dates it.

I.   Governing Law. All terms of this Settlement Agreement shall be governed by and interpreted according to the laws of the State of California and the United States of America, where applicable.

| DATED: December ___, 2019 | |
|---|---|
| | LAURA BUFORD, for herself, the Settlement Class, and the Settlement Aggrieved Group |

| DATED: December _6_, 2019 | |
|---|---|
| | STEPHEN PEDERSEN, General Counsel, on behalf of Medical Solutions, L.L.C. |

**APPROVED AS TO FORM**

_____     DATED: December 9, 2019
Zachary Crosner, Esq.                *Attorneys for Plaintiff*
**CROSNER LEGAL, P.C.**              Laura Buford, the Settlement Class, and
433 N. Camden Dr., Ste. 400          the Settlement Aggrieved Group
Beverly Hills, CA 90210
Telephone: (310) 496-4818
Facsimile: (310) 510-6429
Email: zach@crosnerlegal.com


      /s/ Sarah Kroll-Rosenbaum        *Attorneys for Defendant*
Kenneth D. Sulzer, Esq.               Medical Solutions, L.L.C.
Sarah Kroll-Rosenbaum, Esq.
**CONSTANGY, BROOKS, SMITH
& PROPHETE, LLP**
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile: (424) 465-6630
Email: ksulzer@constangy.com
    skrollrosenbaum@constangy.com

34
JOINT STIPULATION AND SETTLEMENT AGREEMENT

6404500v.2

Doc ID: a04fb39387f81212d990938c7e4629793f40fc36

# EXHIBIT A

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Laura Buford v. Medical Solutions, L.L.C.*
Case No. 4:18-CV-04864-YGR

*A court has authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*Your legal rights are affected whether you act or do not act.*

## NOTICE OF CLASS ACTION SETTLEMENT

To:  All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at a facility operated by Sutter Health in California at any time from May 10, 2014 through _____.

**YOU MAY BE ELIGIBLE TO RECEIVE A PAYMENT FROM THE CLASS ACTION SETTLEMENT DESCRIBED IN THIS NOTICE.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will automatically receive a payment based on the calculation set forth in this Notice after the Court grants final approval of the settlement (the "Settlement Class Member Payment"). |
| **EXCLUDE YOURSELF BY _____, 2020** | You may exclude yourself from ("opt out" of) the settlement, if you do not want to participate in the settlement. If you timely exclude yourself, you will **not** receive a Settlement Class Member Payment or release any claims under the settlement. |
| **OBJECT BY _____, 2020** | Write to the Settlement Administrator if you think the settlement is not fair. You must remain a part of the settlement to object to it, and you cannot object if you also ask to be excluded. |

**THESE RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

## WHY AM I RECEIVING THIS NOTICE?

You received this notice because the records of Medical Solutions, L.L.C. ("Medical Solutions") identify you as a member of a class who will be affected by a proposed class action settlement. The purpose of this notice is to explain the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the U.S. District Court for the Northern District of California. The case consists of a class action titled *Laura Buford v. Medical Solutions, L.L.C.,* Case No. 4:18-CV-04864-YGR (hereafter, "Lawsuit").

On _____, 2020, the Court entered an order granting preliminary approval of a proposed settlement and directing that this Notice be sent to class members because they have a right to know about the proposed settlement, and about all of their options, before the Court decides whether to grant final approval of the proposed settlement.

## WHO IS INCLUDED IN THE SETTLEMENT?

The settlement includes anyone who is a member of the following class that has been certified for settlement purposes only (the "Settlement Class"):

> All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at a facility operated by Sutter Health in California at any time from May 10, 2014 through _____.

Medical Solutions' records identify you as one of the individuals who falls within this class definition.

## WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit is brought by Laura Buford ("Plaintiff"), a nurse formerly employed by Medical Solutions as a healthcare professional to work one or more assignments in California, including assignments at Sutter Health facilities. The Lawsuit is against Medical Solutions.

In the Lawsuit, Plaintiff alleges that Medical Solutions violated California law in several ways. Specifically, the Lawsuit includes claims for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely upon separation of employment, and (8) violation of the Private Attorneys General Act of 2004 ("PAGA").

Medical Solutions denies all the allegations in the Lawsuit and contends that it fully complied with the California Labor Code and all other applicable laws.

## WHO ARE THE ATTORNEYS FOR THE PARTIES?

Counsel for Plaintiff and the Class (Class Counsel)

CROSNER LEGAL, PC
Michael R. Crosner
Zachary M. Crosner
J. Kirk Donnelly
433 N. Camden Dr.
Suite 400
Beverly Hills, CA 90210
Tel: (310) 496-4818
Fax: (310) 510-6429

Counsel for Medical Solutions

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
Kenneth D. Sulzer
Sarah Kroll-Rosenbaum
2029 Century Park East,
Suite 1100
Los Angeles, CA 90067
Tel: (310) 909-7775
Fax: (424) 465-6630

## WHY IS THERE A SETTLEMENT?

The Court has not decided the merits of the claims asserted in the Lawsuit. There was no trial. Plaintiff has agreed to the proposed settlement because she believes it will provide prompt and substantial benefits to the Settlement Class. These benefits were compared with the risk of zero recovery after a contested trial and likely

appeals, possibly years into the future. Medical Solutions vigorously denies all allegations of wrongdoing or liability whatsoever, but has agreed to the proposed settlement to eliminate the burden, expense, uncertainty, and distraction of further litigation.

## WHAT IS THE SETTLEMENT AMOUNT?

The proposed Settlement provides for a total payment of $1,150,000.00 (referred to as the "Gross Settlement Amount").

The portion of the Gross Settlement Amount which will be used to make the Settlement Class Member Payments – the "Class Settlement Pool" – is currently estimated to be approximately $607,500.00. The Class Settlement Pool will be apportioned and paid out to members of the Settlement Class who do not request to be excluded from ("opt out" of) the settlement. **You are not required to do anything to be eligible to receive payment from the Class Settlement Pool.** However, if you request to be excluded from ("opt out" of) the settlement, you will **not** receive the Settlement Class Member Payment from the Class Settlement Pool.

Additionally, Class Counsel will apply to the Court for attorneys' fees of no more than one-quarter ($287,500.00) of the Gross Settlement Amount and for a reimbursement for litigation costs of no more than $15,000.00. Class Counsel will also apply for a service award of no more than $7,500.00 for Laura Buford for her work and efforts prosecuting this case, and for undertaking the risks of payment of costs (a risk if there had been an unsuccessful outcome in this Lawsuit). Settlement administration costs anticipated not to exceed $25,000.00 and a payment of $157,500.00 to the California Labor & Workforce Development Agency ("LWDA") for its share of PAGA penalties will also be deducted from the Gross Settlement Amount. Before they are deducted from the Gross Settlement Amount, the exact amount of these costs will be determined by the Court at the final approval hearing.

Lastly, $50,000.00 will be deducted to make payments to settle the claims of a different group of former employees of Medical Solutions, of which you are **not** a member, referred to as the Settlement Aggrieved Group.

## HOW WILL THE CLASS MEMBER SETTLEMENT PAYMENTS BE CALCULATED?

The Class Settlement Pool will be allocated pro rata among the Settlement Class members who do not request to be excluded from ("opt out" of) the settlement based on the number of workweeks each Settlement Class member worked for Medical Solutions at a facility in California operated by Sutter Health within the class period, which is from May 10, 2014 through _____.

The Class Settlement Pool will first be divided by the aggregate number of workweeks that each Settlement Class member worked during the class period to determine the monetary value of each qualifying workweek. The Settlement Class Member Payment to each individual Settlement Class member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek.

Each Settlement Class Member Payment will be allocated thirty-three and one-third percent (33.33%) to alleged unpaid wages and sixty-six and two-thirds percent (66.67%) to alleged penalties and interest. The portion of the Settlement Class Member Payment allocated to wages will be subject to regular and/or applicable payroll and income tax withholdings (just like a paycheck), and will be reported on an IRS Form W-2. The portion of the Settlement Class Member Payment allocated to penalties and interest will be reported on an IRS Form 1099. Settlement Class members will be responsible for correctly characterizing the Settlement Class Member Payments for tax purposes and paying taxes due, if any.

## HOW MUCH WILL MY PAYMENT BE?

The amount of your Settlement Class Member Payment is estimated to be $_____. That amount is based on Medical Solutions' records that show that you worked ____ workweeks for Medical Solutions at a facility operated by Sutter Health in California between May 10, 2014 and _____.

## WHAT SHOULD I DO IF MY QUALIFYING WORKWEEK INFORMATION IS INCORRECT?

If you believe the number of workweeks you worked for Medical Solutions at a facility operated by Sutter Health in the State of California between May 10, 2014 and _____, as stated above, is incorrect, you may send a letter to the settlement administrator, _____ (hereafter "Settlement Administrator"), indicating what you believe to be the correct information. You should include any documents or other information that supports what you believe to be the correct number of workweeks. The Settlement Administrator will resolve any dispute regarding this issue based on Medical Solutions' records and any information that you provide. The estimated payment amount and number of qualifying workweeks stated above will be presumed correct unless you supply company records from Medical Solutions or other competent records showing different information. Your letter must be postmarked on or before _____, 2020 [*45 days from mailing Notice Packet*] and sent to the following address:

[Settlement Administrator Line 1]
[Settlement Administrator Line 2]
[Settlement Administrator Line 3]

## DO I HAVE TO TAKE ANY ACTION TO RECEIVE A PAYMENT?

**No. To receive your Settlement Class Member Payment, you do not need to do anything.** If you do nothing, you will automatically receive a Settlement Class Member Payment because you are an identified Settlement Class member. However, it is your responsibility to keep the Settlement Administrator informed of any changes to your address. Your Settlement Class Member Payment will be mailed to the last known address the Settlement Administrator has on file for you. If your mailing address is different than the address to which this Notice was mailed, you should contact the Settlement Administrator to change your address at 1-800-_____. Checks for the Settlement Class Member Payment should be deposited soon after receipt. Checks uncashed after 180 days will be voided and the funds sent to the State of California Controller's Office of Unclaimed Property in your name.

## WHEN WILL I GET MY PAYMENT?

The Settlement Class Member Payment will be distributed only if the Court approves the proposed settlement. The Court will hold a final approval hearing on _____, 2020 to decide whether to finally approve the proposed settlement. If the Court grants final approval and there is no appeal of that order, Settlement Class Member Payments will be distributed approximately two and one-half (2 ½) months after the Court enters a Judgment approving the settlement. If there is an appeal of the Court's Judgment granting final approval, however, the approval process will take additional time to resolve and could last for more than a year.

## WHAT CLAIMS AM I RELEASING IN RETURN FOR A PAYMENT?

If the proposed settlement is finally approved by the Court, all Settlement Class members who have not timely requested exclusion from ("opted out" of) the settlement will release Medical Solutions and its past, present and future subsidiaries, divisions, affiliates, predecessors, successors, and assigns, officers, directors, agents, employees, advisors, insurers, attorneys, executors, administrators, servants, owners, shareholders, bondholders,

partners, and any parent or related organizations, successors in interest, and/or representatives, from any and all claims that were or could have been alleged based on the facts alleged in the operative complaint on file in the Lawsuit which occurred during the class period (i.e. from May 10, 2014 through _____), including, but not limited to claims for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely upon separation of employment, and (8) violation of PAGA; and also including, but not limited to, any corresponding Fair Labor Standards Act ("FLSA") or related PAGA or other similar claims under any federal, state, or local law ("Released Claims"). The Released Claims expressly exclude claims of vested benefits, wrongful termination, unemployment insurance, social security, disability, and workers' compensation, and claims outside of the class period.

The Class Released Claims also expressly exclude certain claims asserted in *Dittman v. Medical Solutions, L.L.C., et al.*, Eastern District of California Case No. 2:17-cv-01851-MCE-CKD for (1) unpaid overtime wages; and (2) under PAGA, California Business & Professions Code §§ 17200, *et seq*., and California Labor Code § 203, but only to the extent those claims are premised on the unpaid overtime claim as asserted in *Dittman*.

## HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS?

If you wish to pursue your own separate legal action against Medical Solutions for the claims asserted in the Lawsuit, or if you otherwise wish not to participate in the settlement for whatever reason, you should exclude yourself from this case (that is, "opt out" of the settlement). To opt out and exclude yourself from the settlement, you must complete, sign, and return the enclosed Opt-Out Form to the Settlement Administrator.

The Opt-Out Form must include your full name, current address, and last four digits of your social security number, must be signed by you, and must be postmarked and mailed to the Settlement Administrator at the below address on or before _____, 2020 [*45 days from mailing Notice Packet*]. Opt-Out Forms postmarked after this date may be disregarded.

[Settlement Administrator Line 1]
[Settlement Administrator Line 2]
[Settlement Administrator Line 3]

All individuals who timely return a properly completed Opt-Out Form will not be part of the settlement, will not release any claims under the settlement, and will not receive any payment under the settlement.

## HOW DO I OBJECT TO THE SETTLEMENT?

If you don't think the proposed settlement is fair, you can object to the settlement and tell the Court that you don't agree with the settlement or some part of it. Any Class Member who has NOT asked to be excluded from the settlement may object to the proposed settlement. The Court will consider your input.

Specifically, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the final approval/fairness hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Laura Buford v. Medical Solutions, L.L.C.,* Case No. 4:18-CV-04864-YGR), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay St., Oakland, California, 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [*45 days from mailing Notice Packet*].

If you do not submit a written objection, you may still appear at the final approval/fairness hearing and make your objection to the Court.

## WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?

Objecting is telling the Court that you don't like something about the settlement. You may object only if you remain in the Settlement Class. By contrast, requesting to be excluded or opting out of the Settlement Class is telling the Court that you don't want to participate in the settlement. If you opt out, you have no basis to object because the settlement no longer affects you.

## WHEN AND WHERE IS THE FINAL APPROVAL/FAIRNESS HEARING?

The Court will hold a final approval/fairness hearing concerning the proposed settlement on _____, 2020 at _____ a.m./p.m., in Courtroom 1 of the U.S. District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Oakland, California 94612. At this hearing, the Court will determine whether the settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve Class Counsel's request for attorneys' fees and costs, Plaintiff's service award, the Settlement Administrator's fees and expenses, the payment to the LWDA, the payment to the Settlement Class, and the payment to the Settlement Aggrieved Group.

The Court may reschedule the final approval/fairness hearing without further notice to the Settlement Class members. However, any Settlement Class member who has submitted a timely objection to the settlement will be notified by Class Counsel of any rescheduling of the date and time of the final approval/fairness hearing.

You are **not** required to come to the final approval/fairness hearing. Class Counsel will represent the interests of Settlement Class members at the hearing. But you are welcome to come at your own expense and you may ask the Court for permission to speak at the hearing. If you send an objection, you don't have to come to Court to talk about it. As long as you timely mailed your written objection, the Court will consider it. You may also hire and pay your own lawyer to attend if you so desire.

## WHO MAY I CONTACT IF I HAVE QUESTIONS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting Class Counsel, Crosner Legal PC, at (310) 496-4818, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay St., Oakland, California, 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT
# B

## U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Laura Buford v. Medical Solutions, L.L.C.*
Case No. 4:18-CV-04864-YGR

*A court has authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*Your legal rights are affected whether you act or do not act.*

### NOTICE OF CLASS ACTION AND PAGA SETTLEMENT

To:    All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who both: (a) worked one or more assignments at a facility operated by Sutter Health in California at any time from May 10, 2014 through _____; and (b) also worked one or more assignments at any facility (excluding facilities operated by Sutter Health) in California at any time from August 28, 2018 through _____.

**YOU MAY BE ELIGIBLE TO RECEIVE A PAYMENT FROM THE CLASS ACTION AND PAGA SETTLEMENT DESCRIBED IN THIS NOTICE.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will automatically receive a payment based on the calculation set forth in this Notice after the Court grants final approval of the settlement (the "Settlement Class Member Payment" and the "SAG Member Payment"). |
| **EXCLUDE YOURSELF, IN PART, BY _____, 2020** | You may exclude yourself from ("opt out" of) a part of the settlement, if you do not want to participate in the settlement. If you timely exclude yourself, you will **not** receive a Settlement Class Member Payment or release the Class Released Claims under the settlement. However, even if you timely exclude yourself from that part of the settlement, you will still receive the SAG Member Payment and release the SAG Released Claims. |
| **OBJECT BY _____, 2020** | Write to the Settlement Administrator if you think the settlement is not fair. You must remain a part of the settlement to object to it, and you cannot object if you also ask to be excluded. |

**THESE RIGHTS AND OPTIONS – AND THE DEADLINES TO EXERCISE THEM – ARE EXPLAINED IN THIS NOTICE.**

| WHY AM I RECEIVING THIS NOTICE? |
|---|

You received this notice because the records of Medical Solutions, L.L.C. ("Medical Solutions") identify you as a member of both a class and an aggrieved group who will be affected by a proposed class action settlement, which also includes a settlement pursuant to the Private Attorneys' General Act of 2004 ("PAGA"). The purpose of this notice is to explain the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the U.S. District Court for the Northern District of California. The case consists of a class action titled *Laura Buford v. Medical Solutions, L.L.C.,* Case No. 4:18-CV-04864-YGR (hereafter, "Lawsuit").

On _____, 2020, the Court entered an order granting preliminary approval of a proposed settlement and directing that this Notice be sent to class members and aggrieved group members because they have a right to know about the proposed settlement, and about all of their options, before the Court decides whether to grant final approval of the proposed settlement.

## WHO IS INCLUDED IN THE SETTLEMENT?

The settlement includes anyone who is a member of the following class that has been certified for settlement purposes only (the "Settlement Class"):

> All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at a facility operated by Sutter Health in California at any time from May 10, 2014 through _____.

The settlement also includes anyone who is a member of the following group (the "Settlement Aggrieved Group" or "SAG"):

> All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at any facility (excluding facilities operated by Sutter Health) in California at any time from August 28, 2018 through _____.

Medical Solutions' records identify you as one of the individuals who falls within **both** the Settlement Class and the Settlement Aggrieved Group.

## WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit is brought by Laura Buford ("Plaintiff"), a nurse formerly employed by Medical Solutions as a healthcare professional to work one or more assignments in California. The Lawsuit is against Medical Solutions.

In the Lawsuit, Plaintiff alleges that Medical Solutions violated California law in several ways. Specifically, the Lawsuit includes claims for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely upon separation of employment, and (8) violation of the Private Attorneys General Act of 2004 ("PAGA").

Medical Solutions denies all the allegations in the Lawsuit and contends that it fully complied with the California Labor Code and all other applicable laws.

## WHO ARE THE ATTORNEYS FOR THE PARTIES?

Counsel for Plaintiff, the Class, and the SAG
(Class-SAG Counsel)

CROSNER LEGAL, PC
Michael R. Crosner
Zachary M. Crosner
J. Kirk Donnelly
433 N. Camden Dr.
Suite 400
Beverly Hills, CA 90210
Tel: (310) 496-4818
Fax: (310) 510-6429

Counsel for Medical Solutions

CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
Kenneth D. Sulzer
Sarah Kroll-Rosenbaum
2029 Century Park East,
Suite 1100
Los Angeles, CA 90067
Tel: (310) 909-7775
Fax:  (424) 465-6630

## WHY IS THERE A SETTLEMENT?

The Court has not decided the merits of the claims asserted in the Lawsuit. There was no trial.  Plaintiff has agreed to the proposed settlement because she believes it will provide prompt and substantial benefits to the Settlement Class and the SAG.  These benefits were compared with the risk of zero recovery after a contested trial and likely appeals, possibly years into the future. Medical Solutions vigorously denies all allegations of wrongdoing or liability whatsoever, but has agreed to the proposed settlement to eliminate the burden, expense, uncertainty, and distraction of further litigation.

## WHAT IS THE SETTLEMENT AMOUNT?

The proposed Settlement provides for a total payment of $1,150,000.00 (referred to as the "Gross Settlement Amount").

Of that sum, $50,000.00 will be used to make the SAG Member Payments – the "SAG Settlement Pool." The SAG Settlement Pool will be apportioned and paid out to members of the Settlement Aggrieved Group**. You are not required to do anything to be eligible to receive payment from the SAG Settlement Pool.**

The portion of the Gross Settlement Amount which will be used to make the Settlement Class Member Payments – the "Class Settlement Pool" – is currently estimated to be approximately $607,500.00.  The Class Settlement Pool will be apportioned and paid out to members of the Settlement Class who do not request to be excluded from ("opt out" of) the settlement.  **You are not required to do anything to be eligible to receive payment from the Class Settlement Pool.**  However, if you request to be excluded from ("opt out" of) the settlement, you will **not** receive the Settlement Class Member Payment from the Class Settlement Pool. Regardless of whether you request to be excluded from ("opt out" of) the Settlement Class, you will still receive the SAG Member Payment.

Additionally, Class-SAG Counsel will apply to the Court for attorneys' fees of no more than one-quarter ($287,500.00) of the Gross Settlement Amount and for a reimbursement for litigation costs of no more than $15,000.00.  Class-SAG Counsel will also apply for a service award of no more than $7,500.00 for Laura Buford for her work and efforts prosecuting this case, and for undertaking the risks of payment of costs (a risk if there had been an unsuccessful outcome in this Lawsuit).  Settlement administration costs anticipated not to exceed $25,000.00 and a payment of $157,500.00 to the California Labor & Workforce Development Agency ("LWDA") for its share of PAGA penalties will also be deducted from the Gross Settlement Amount.  Before they are deducted from the Gross Settlement Amount, the exact amount of these costs will be determined by the Court at the final approval hearing.

## HOW WILL THE SETTLEMENT CLASS MEMBER PAYMENTS & SAG MEMBER PAYMENTS BE CALCULATED?

### SETTLEMENT CLASS MEMBER PAYMENTS:

The Class Settlement Pool will be allocated pro rata among the Settlement Class members who do not request to be excluded from ("opt out" of) the settlement based on the number of workweeks each Settlement Class member worked for Medical Solutions at a facility in California operated by Sutter Health within the class period, which is from May 10, 2014 through _____.

The Class Settlement Pool will first be divided by the aggregate number of workweeks that each Settlement Class member worked during the class period to determine the monetary value of each qualifying workweek. The Settlement Class Member Payment to each individual Settlement Class member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek.

Each Settlement Class Member Payment will be allocated thirty-three and one-third percent (33.33%) to alleged unpaid wages and sixty-six and two-thirds percent (66.67%) to alleged penalties and interest. The portion of the Settlement Class Member Payment allocated to wages will be subject to regular and/or applicable payroll and income tax withholdings (just like a paycheck), and will be reported on an IRS Form W-2. The portion of the Settlement Class Member Payment allocated to penalties and interest will be reported on an IRS Form 1099. Settlement Class members will be responsible for correctly characterizing the Settlement Class Member Payments for tax purposes and paying taxes due, if any.

### SAG MEMBER PAYMENTS:

The SAG Settlement Pool will be allocated pro rata among the SAG members based on the number of workweeks each SAG member worked for Medical Solutions at a facility in California (excluding facilities operated by Sutter Health) within the SAG period, which is from August 28, 2018 through _____.

The SAG Settlement Pool will first be divided by the aggregate number of workweeks that each SAG member worked during the SAG period to determine the monetary value of each qualifying workweek. The SAG Member Payment to each individual SAG member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek.

Each SAG Member Payment will be allocated entirely to alleged penalties. The SAG Member Payments will be reported on an IRS Form 1099. SAG members will be responsible for correctly characterizing the SAG Member Payment for tax purposes and paying taxes due, if any.

## HOW MUCH WILL MY PAYMENT BE?

### SETTLEMENT CLASS MEMBER PAYMENT:

The amount of your Settlement Class Member Payment is estimated to be $_____. That amount is based on Medical Solutions' records that show that you worked ____ workweeks for Medical Solutions at a facility operated by Sutter Health in California between May 10, 2014 and _____.

# SAG MEMBER PAYMENT:

The amount of your SAG Member Payment is estimated to be $_____. That amount is based on Medical Solutions' records that show that you worked \_\_\_\_ workweeks for Medical Solutions at a facility in California (excluding facilities operated by Sutter Health) between August 28, 2018 and _____.

## WHAT SHOULD I DO IF MY QUALIFYING WORKWEEK INFORMATION IS INCORRECT?

**Settlement Class Member Payment:** If you believe the number of workweeks you worked for Medical Solutions at a facility operated by Sutter Health in the State of California between May 10, 2014 and _____, as stated above, is incorrect, you may send a letter to the settlement administrator, _____ (hereafter "Settlement Administrator"**),** indicating what you believe to be the correct information.

You should include any documents or other information that supports what you believe to be the correct number of workweeks. The Settlement Administrator will resolve any dispute regarding this issue based on Medical Solutions' records and any information that you provide. The estimated payment amount and number of qualifying workweeks stated above will be presumed correct unless you supply company records from Medical Solutions or other competent records showing different information. Your letter must be postmarked on or before _____, 2020 [*45 days from mailing Notice Packet*] and sent to the following address:

[Settlement Administrator Line 1]
[Settlement Administrator Line 2]
[Settlement Administrator Line 3]

## DO I HAVE TO TAKE ANY ACTION TO RECEIVE A PAYMENT?

**No.  To receive your Settlement Class Member Payment and SAG Member Payment, you do not need to do anything.**  If you do nothing, you will automatically receive a Settlement Class Member Payment because you are an identified Settlement Class member, and you will also receive a SAG Member Payment because you are an identified SAG Member.

However, it is your responsibility to keep the Settlement Administrator informed of any changes to your address. Your Settlement Class Member Payment and SAG Member Payment will be mailed to the last known address the Settlement Administrator has on file for you.  If your mailing address is different than the address to which this Notice was mailed, you should contact the Settlement Administrator to change your address at 1-800-_____. Checks for the Settlement Class Member Payment and SAG Member Payment should be deposited soon after receipt.  Checks uncashed after 180 days will be voided and the funds sent to the State of California Controller's Office of Unclaimed Property in your name.

## WHEN WILL I GET MY PAYMENT?

The Settlement Class Member Payment and SAG Member Payment will be distributed only if the Court approves the proposed settlement.  The Court will hold a final approval hearing on _____, 2020 to decide whether to finally approve the proposed settlement.  If the Court grants final approval and there is no appeal of that order, Settlement Class Member Payments and SAG Member Payments will be distributed approximately two and one-half (2 ½) months after the Court enters a Judgment approving the settlement.  If there is an appeal of the Court's Judgment granting final approval, however, the approval process will take additional time to resolve and could last for more than a year.

## WHAT CLAIMS AM I RELEASING IN RETURN FOR A PAYMENT?

### SETTLEMENT CLASS MEMBERS:

If the proposed settlement is finally approved by the Court, all Settlement Class members who have not timely requested exclusion from ("opted out" of) the settlement will release Medical Solutions and its past, present and future subsidiaries, divisions, affiliates, predecessors, successors, and assigns, officers, directors, agents, employees, advisors, insurers, attorneys, executors, administrators, servants, owners, shareholders, bondholders, partners, and any parent or related organizations, successors in interest, and/or representatives, from any and all claims that were or could have been alleged based on the facts alleged in the operative complaint on file in the Lawsuit which occurred during the class period (i.e. from May 10, 2014 through _____), including, but not limited to claims for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely upon separation of employment, and (8) violation of PAGA; and also including, but not limited to, any corresponding Fair Labor Standards Act ("FLSA") or related PAGA or other similar claims under any federal, state, or local law ("Class Released Claims"). The Class Released Claims expressly exclude claims of vested benefits, wrongful termination, unemployment insurance, social security, disability, and workers' compensation, and claims outside of the class period.

The Class Released Claims also expressly exclude certain claims asserted in *Dittman v. Medical Solutions, L.L.C., et al.*, Eastern District of California Case No. 2:17-cv-01851-MCE-CKD for (1) unpaid overtime wages; and (2) under PAGA, California Business & Professions Code §§ 17200, *et seq*., and California Labor Code § 203, but only to the extent those claims are premised on the unpaid overtime claim as asserted in *Dittman*.

### SAG MEMBERS:

If the proposed settlement is finally approved by the Court, all SAG members will release Medical Solutions and its past, present and future subsidiaries, divisions, affiliates, predecessors, successors, and assigns, officers, directors, agents, employees, advisors, insurers, attorneys, executors, administrators, servants, owners, shareholders, bondholders, partners, and any parent or related organizations, successors in interest, and/or representatives, from any and all claims for violation of PAGA, only, that were or could have been alleged based on the facts alleged in the operative complaint on file in the Lawsuit which occurred during the SAG period (i.e. from August 28, 2018 through _____), including, but not limited to claims for violation of PAGA premised on (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, and (7) failure to pay all wages timely upon separation of employment ("SAG Released Claims").

The SAG Released Claims expressly exclude your individual non-PAGA claims for any of the allegations in the operative complaint, as well as claims of vested benefits, wrongful termination, unemployment insurance, social security, disability, and workers' compensation, and claims outside of the SAG period.

## HOW DO I EXCLUDE MYSELF FROM THE SETTLEMENT CLASS?

If you wish to pursue your own separate legal action against Medical Solutions for the claims asserted in the Lawsuit (except for the SAG Released Claims), or if you otherwise wish not to participate in the settlement for whatever reason, you should exclude yourself from this case (that is, "opt out" of the settlement). To opt out

and exclude yourself from the settlement, you must complete, sign, and return the enclosed Opt-Out Form to the Settlement Administrator.

The Opt-Out Form must include your full name, current address, and last four digits of your social security number, must be signed by you, and must be postmarked and mailed to the Settlement Administrator at the below address on or before _____, 2020 [*45 days from mailing Notice Packet*]. Opt-Out Forms postmarked after this date may be disregarded.

[Settlement Administrator Line 1]
[Settlement Administrator Line 2]
[Settlement Administrator Line 3]

All individuals who timely return a properly completed Opt-Out Form will not be part of the settlement for purposes of the Settlement Class Member Payments, will not release the Class Released Claims under the settlement, and will not receive a Settlement Class Member Payment.

However, even if you timely return a properly completed Opt-Out Form, you will still release the SAG Released Claims and will still receive a SAG Member Payment.

## HOW DO I OBJECT TO THE SETTLEMENT?

If you don't think the proposed settlement is fair, you can object to the settlement and tell the Court that you don't agree with the settlement or some part of it. Any Class Member who has NOT asked to be excluded from the settlement may object to the proposed settlement. The Court will consider your input.

Specifically, you can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the final approval/fairness hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (*Laura Buford v. Medical Solutions, L.L.C.,* Case No. 4:18-CV-04864-YGR), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, 1301 Clay St., Oakland, California, 94612, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before [*45 days from mailing Notice Packet*].

If you do not submit a written objection, you may still appear at the final approval/fairness hearing and make your objection to the Court.

## WHAT'S THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?

Objecting is telling the Court that you don't like something about the settlement. You may object only if you remain in the Settlement Class. By contrast, requesting to be excluded or opting out of the Settlement Class is telling the Court that you don't want to participate in the settlement, as it pertains to the Class Released Claims and the Settlement Class Member Payments. If you opt out, you have no basis to object because the settlement no longer affects you (except to the extent of the SAG Released Claims and the SAG Member Payment).

## WHEN AND WHERE IS THE FINAL APPROVAL/FAIRNESS HEARING?

The Court will hold a final approval/fairness hearing concerning the proposed settlement on _____, 2020 at _____ a.m./p.m., in Courtroom 1 of the U.S. District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, 4th Floor, Oakland, California 94612.  At this hearing, the Court will determine whether the settlement should be finally approved as fair, reasonable, and adequate.  The Court will also be asked to approve Class-SAG Counsel's request for attorneys' fees and costs, Plaintiff's service award, the Settlement Administrator's fees and expenses, the payment to the LWDA, the payment to the Settlement Class, and the payment to the Settlement Aggrieved Group.

The Court may reschedule the final approval/fairness hearing without further notice to the Settlement Class members or SAG members.  However, anyone who has submitted a timely objection to the settlement will be notified by Class-SAG Counsel of any rescheduling of the date and time of the final approval/fairness hearing.

You are **not** required to come to the final approval/fairness hearing.  Class-SAG Counsel will represent the interests of Settlement Class members and SAG members at the hearing.  But you are welcome to come at your own expense and you may ask the Court for permission to speak at the hearing.  If you send an objection, you don't have to come to Court to talk about it.  As long as you timely mailed your written objection, the Court will consider it.  You may also hire and pay your own lawyer to attend if you so desire.

## WHO MAY I CONTACT IF I HAVE QUESTIONS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting Class-SAG Counsel, Crosner Legal PC, at (310) 496-4818, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay St., Oakland, California, 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT C

# U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*Laura Buford v. Medical Solutions, L.L.C.*
Case No. 4:18-CV-04864-YGR

*A court has authorized this notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*Your legal rights are affected.*

## NOTICE OF PAGA SETTLEMENT

To:    All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at any facility (excluding facilities operated by Sutter Health) in California at any time from August 28, 2018 through _____.

**YOU ARE ELIGIBLE TO RECEIVE A PAYMENT FROM THE PAGA SETTLEMENT DESCRIBED IN THIS NOTICE.**

| YOUR LEGAL RIGHTS IN THIS SETTLEMENT |
| --- |
| You will automatically receive a payment based on the calculation set forth in this Notice after the Court grants final approval of the settlement (the "SAG Member Payment"). |

| WHY AM I RECEIVING THIS NOTICE? |
| --- |

You received this notice because the records of Medical Solutions, L.L.C. ("Medical Solutions") identify you as a member of a group of aggrieved employees (the "Settlement Aggrieved Group" or "SAG") who will be affected by a proposed settlement of a lawsuit filed in part pursuant to the California Private Attorneys' General Act of 2004 ("PAGA"). The purpose of this notice is to explain the lawsuit, the settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the case is the U.S. District Court for the Northern District of California. The case consists of a lawsuit titled *Laura Buford v. Medical Solutions, L.L.C.,* Case No. 4:18-CV-04864-YGR (hereafter, the "Lawsuit").

On _____, 2020, the Court entered an order granting preliminary approval of a proposed settlement and directing that this Notice be sent to all SAG members.

| WHO IS INCLUDED IN THE SETTLEMENT? |
| --- |

The settlement includes anyone who is a member of the Settlement Aggrieved Group, defined as follows:

> All non-exempt, hourly healthcare professionals employed by Medical Solutions, L.L.C. who worked one or more assignments at any facility (excluding facilities operated by Sutter Health) in California at any time from August 28, 2018 through _____.

Medical Solutions' records identify you as one of the individuals who falls within this group.

## WHAT IS THIS LAWSUIT ABOUT?

The Lawsuit is brought by Laura Buford ("Plaintiff"), a nurse formerly employed by Medical Solutions as a healthcare professional to work one or more assignments in California. The Lawsuit is against Medical Solutions.

In the Lawsuit, Plaintiff alleges that Medical Solutions violated California law in several ways. Specifically, the Lawsuit includes claims for (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, (7) failure to pay all wages timely upon separation of employment, and (8) violation of PAGA.

Medical Solutions denies all the allegations in the Lawsuit and contends that it fully complied with the California Labor Code and all other applicable laws.

## WHO ARE THE ATTORNEYS FOR THE PARTIES?

Counsel for Plaintiff and the SAG (SAG Counsel)

CROSNER LEGAL, PC
Michael R. Crosner
Zachary M. Crosner
J. Kirk Donnelly
433 N. Camden Dr.
Suite 400
Beverly Hills, CA 90210
Tel: (310) 496-4818
Fax: (310) 510-6429

Counsel for Medical Solutions

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP
Kenneth D. Sulzer
Sarah Kroll-Rosenbaum
2029 Century Park East,
Suite 1100
Los Angeles, CA 90067
Tel: (310) 909-7775
Fax: (424) 465-6630

## WHY IS THERE A SETTLEMENT?

The Court has not decided the merits of the claims asserted in the Lawsuit. There was no trial. Plaintiff has agreed to the proposed settlement because she believes it will provide prompt and substantial benefits to the SAG. These benefits were compared with the risk of zero recovery after a contested trial and likely appeals, possibly years into the future. Medical Solutions vigorously denies all allegations of wrongdoing or liability whatsoever, but has agreed to the proposed settlement to eliminate the burden, expense, uncertainty, and distraction of further litigation.

## WHAT IS THE SETTLEMENT AMOUNT?

The proposed Settlement provides for a total payment of $1,150,000.00 (referred to as the "Gross Settlement Amount").

Of that sum, $200,000 is allocated to civil penalties under PAGA for claims based upon alleged Labor Code violations related to the SAG. Upon final Court approval of the Settlement, 75% ($150,000) of that sum will be paid as civil penalties to the California Labor and Workforce Development Agency (the "LWDA"). The remaining 25%, or $50,000.00, represents the SAG members' share of the civil penalties and will be used to make the SAG Member Payments – the "SAG Settlement Pool." The SAG Settlement Pool will be apportioned

and paid out to members of the Settlement Aggrieved Group. **You are _not_ required to do anything to receive payment from the SAG Settlement Pool.**

The remaining portion of the Gross Settlement Amount, after certain deductions (described below), will be used to make payments to settle the claims of a different group of current and former employees of Medical Solutions, referred to as the Settlement Class. You are NOT a member of the Settlement Class and are not entitled to receive anything from the remaining portion of the Gross Settlement Amount

Additionally, SAG Counsel will apply to the Court for attorneys' fees of no more than one-quarter ($287,500.00) of the Gross Settlement Amount and for a reimbursement for litigation costs of no more than $15,000.00. SAG Counsel will also apply for a service award of no more than $7,500.00 for Laura Buford for her work and efforts prosecuting this case, and for undertaking the risks of payment of costs (a risk if there had been an unsuccessful outcome in this Lawsuit). Settlement administration costs anticipated not to exceed $25,000.00 and a second payment of $7,500.00 to the LWDA for its share of PAGA penalties related to claims of the Settlement Class, all will also be deducted from the Gross Settlement Amount. Before they are deducted from the Gross Settlement Amount, the exact amount of these costs will be determined by the Court at the final approval hearing.

## HOW WILL THE SAG MEMBER PAYMENT PAYMENTS BE CALCULATED?

The SAG Settlement Pool will be allocated pro rata among the SAG members based on the number of workweeks each SAG member worked for Medical Solutions at a facility in California (excluding facilities operated by Sutter Health) within the SAG period, which is from August 28, 2018 through _____.

The SAG Settlement Pool will first be divided by the aggregate number of workweeks that each SAG member worked during the SAG period to determine the monetary value of each qualifying workweek. The SAG Member Payment to each individual SAG member will then be calculated by multiplying the number of qualifying workweeks worked by that individual by the monetary value of each qualifying workweek.

Each SAG Member Payment will be allocated entirely to alleged penalties. The SAG Member Payments will be reported on an IRS Form 1099. SAG members will be responsible for correctly characterizing the SAG Member Payment for tax purposes and paying taxes due, if any.

## HOW MUCH WILL MY PAYMENT BE?

The amount of your SAG Member Payment is estimated to be $_____. That amount is based on Medical Solutions' records that show that you worked ____ workweeks for Medical Solutions at a facility in California (excluding facilities operated by Sutter Health) between August 28, 2018 and _____.

## DO I HAVE TO TAKE ANY ACTION TO RECEIVE A PAYMENT?

**No. To receive your SAG Member Payment, you do not need to do anything.** If you do nothing, you will automatically receive a SAG Member Payment because you are an identified SAG member.

However, it is your responsibility to keep the Settlement Administrator informed of any changes to your address. Your SAG Member Payment will be mailed to the last known address the Settlement Administrator has on file for you. If your mailing address is different than the address to which this Notice was mailed, you should contact the Settlement Administrator to change your address at 1-800-_____. Checks for the SAG Member

Payment should be deposited soon after receipt. Checks uncashed after 180 days will be voided and the funds sent to the State of California Controller's Office of Unclaimed Property in your name.

## WHEN WILL I GET MY PAYMENT?

The SAG Member Payment will be distributed only if the Court approves the proposed settlement. The Court will hold a final approval hearing on _____, 2020 to decide whether to finally approve the proposed settlement. If the Court grants final approval and there is no appeal of that order, SAG Member Payments will be distributed approximately two and one-half (2 ½) months after the Court enters a Judgment approving the settlement. If there is an appeal of the Court's Judgment granting final approval, however, the approval process will take additional time to resolve and could last for more than a year.

## WHAT CLAIMS AM I RELEASING IN RETURN FOR A PAYMENT?

If the proposed settlement is finally approved by the Court, all SAG members will release Medical Solutions and its past, present and future subsidiaries, divisions, affiliates, predecessors, successors, and assigns, officers, directors, agents, employees, advisors, insurers, attorneys, executors, administrators, servants, owners, shareholders, bondholders, partners, and any parent or related organizations, successors in interest, and/or representatives, from any and all claims for violation of PAGA, only, that were or could have been alleged based on the facts alleged in the operative complaint on file in the Lawsuit which occurred during the SAG period (i.e. from August 28, 2018 through _____), including, but not limited to claims for violation of PAGA premised on (1) failure to provide meal periods, (2) failure to authorize or permit rest periods, (3) failure to provide complete and accurate wage statements, (4) failure to pay for all reimbursable expenses, (5) failure to pay minimum wages, (6) unfair business practices, and (7) failure to pay all wages timely upon separation of employment ("SAG Released Claims").

The SAG Released Claims expressly exclude your individual non-PAGA wage claims for any of the allegations in the operative complaint, as well as claims of vested benefits, wrongful termination, unemployment insurance, social security, disability, and workers' compensation, and claims outside of the SAG period.

The SAG Released Claims also expressly exclude certain PAGA claims asserted in *Dittman v. Medical Solutions, L.L.C., et al.*, Eastern District of California Case No. 2:17-cv-01851-MCE-CKD for unpaid overtime wages, and California Labor Code § 203 to the extent that claim is premised on the unpaid overtime claim as asserted in *Dittman*.

## WHEN AND WHERE IS THE FINAL APPROVAL/FAIRNESS HEARING?

The Court will hold a final approval/fairness hearing concerning the proposed settlement on _____, 2020 at _____ a.m./p.m., in Courtroom 1 of the U.S. District Court for the Northern District of California, Oakland Courthouse, located at 1301 Clay Street, Oakland, California 94612. At this hearing, the Court will determine whether the settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve SAG Counsel's request for attorneys' fees and costs, the Plaintiff's service award, the Settlement Administrator's fees and expenses, the payments to the LWDA, the payment to the Settlement Aggrieved Group, and the payment to the Settlement Class.

The Court may reschedule the final approval/fairness hearing without further notice to the SAG members.

You are **not** required to come to the final approval/fairness hearing.

## WHO MAY I CONTACT IF I HAVE QUESTIONS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting SAG Counsel, Crosner Legal PC, at (310) 496-4818, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, 1301 Clay St., Oakland, California, 94612, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS.**

# EXHIBIT
# D

# OPT-OUT FORM

*Laura Buford v. Medical Solutions, L.L.C.*
Civil Action No. 4:18-CV-04864-YGR
United States District Court, Northern District of California

**To exclude yourself from, or "opt out" of, the Settlement Class, please complete, sign, and date this form, and then mail it on or before** _____**, 2020 to the Settlement Administrator at the following address using the enclosed, self-addressed, postage-prepaid return envelope:**

INSTRUCTIONS:

      A.      Only complete and return this form if you do **NOT** want to be included in the Settlement Class.  You will **NOT** receive a Settlement Class Member Payment if you return this form.

      B.      To exclude yourself from, or "opt out" of, the Settlement Class, complete, sign, date, and return this form.  To be effective, this form must be filled out completely and postmarked on or before _____, 2020.

      C.      You are responsible for maintaining a copy of the fully completed form and proof of mailing.

---

**I want to OPT-OUT of the class action lawsuit and Settlement Class in the case entitled *Laura Buford v. Medical Solutions, L.L.C.*, United States District Court, Northern District of California, Case No. 4:18-cv-04864-YGR.  I understand that by requesting to be excluded, I will not receive the Settlement Class Member Payment described in the Notice.**

Name: _____ (please print)

Address: _____

Last 4 Digits of SSN: _____

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

_____      _____
(Sign your name here)      Date