Michael R. Crosner (SBN 41299)
mike@crosnerlegal.com
Zachary M. Crosner (SBN 272295)
zach@crosnerlegal.com
J. Kirk Donnelly (SBN 179401)
**CROSNER LEGAL, PC**
433 N. Camden Dr., Ste. 400
Beverly Hills, CA 90210
Tel: (310) 496-5818
Fax: (310) 510-6429

Attorneys for Plaintiff Laura Buford

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

LAURA BUFORD, on behalf of herself and others similarly situated,

Plaintiff,

vs.

MEDICAL SOLUTIONS, L.L.C., a Nebraska limited liability corporation; and DOES 1 through 100, inclusive.

Defendants.

CASE NO.: 4:18-CV-04864-YGR

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND REPRESENTATIVE ACTION SETTLEMENT**

Date: July 21, 2020
Time: 2:00 p.m.
Place: Courtroom 1, 4th Floor

Hon. Yvonne Gonzalez-Rogers

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. STATEMENT OF THE FACTS ..... 2

III. SETTLEMENT TERMS ..... 3

A. Proposed Settlement Terms ..... 3

B. Class Certification ..... 3

C. Settlement Funds and Distribution ..... 3

D. Settlement Administration ..... 4

E. Attorney's Fees And Litigation Expenses ..... 5

F. Incentive Award For The Class Representative ..... 6

G. Releases ..... 6

H. PAGA Penalties ..... 7

IV. THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL ..... 7

A. The Strength of Plaintiff's Case ..... 9

B. The Risk, Expense, Complexity and Likely Duration of Further Litigation ..... 10

C. The Risk of Maintaining Class Action Status Throughout the Trial ..... 10

D. The Amount Offered in Settlement ..... 11

E. The Stage of the Proceedings and the Extent of Discovery Completed ..... 12

F. The Experience and Views of Counsel ..... 12

G. The Reaction of the Class to the Settlement ..... 13

H. No Collusion Between the Parties or their Counsel ..... 13

V. PAGA PENALTIES AND NOTICE TO THE LWDA ..... 13

VI. THE CLAIM ADMINISTRATOR'S FEES ..... 14

VII. THE PROPOSED CLASS REPRESENTATIVE PAYMENT IS REASONABLE ..... 15

VIII. CONCLUSION ..... 16

# TABLE OF AUTHORITIES

## CASES

Class Plaintiffs v. Seattle,
995 F.2d 1268 (9th Cir. 1992) ........................................................................ 8-9

Hanlon v. Chrysler Corp.
150 F. 3d 1011(9th Cir. 1998)............................................................................8

In re: American Bank v. Note Holographics
127 F. Supp. 2d. 418 (S.D. N.Y. 2001) ...........................................................13

In re: GMC Pick-Up Truck Fuel Tank Prods Litig.
55 F. 3d 768 (3d. Cir. 1995)............................................................................10

Jordan
2018 U.S. Dist. LEXIS 25297 ..................................................................... 11,13

Kakani v. Oracle Corp.
2007 WL 1793774 (N.D. Cal June 19, 2007) ...................................................11

Linney v. Cellular Alaska Partnership
151 F.3d 1234 (9th Cir. 1998)........................................................................ 8-9

Mandujano v. Basic Vegetable Prod. Inc.
541 F.2d 832 (9th Cir. 1976)............................................................................13

Nelson v. Avon 5 Prod. Inc.
2017 WL 733145 (N.D. Cal. Feb. 24, 2017).....................................................15

Officers for Justice v. Civil Service Comm'n
688 F.2d 615 (9th Cir. 1982)........................................................................ 7-8

Torchia v. W.W. Grainger, Inc.
(E.D. Cal. 2014) 304 F.R.D. 256......................................................................15

Wal-Mart Stores, Inc. v. Visa U.S.A., Inc. .
396 F 3d. 96 (2d. Cir. 2005)..............................................................................8

White v. Experian Information Solutions, Inc.
803 F. Supp. 2d 1086 (C.D. Cal. 2011)..............................................................9

## STATE CASES

Arias v. Superior Court
46 Cal. 4th 969 (2009).......................................................................................6

Duran v. U.S. Bank
59 Cal. 4th 1 (2012) .......... 10

Wershba v. Applc Computer
(2001) Ca1. App.4th 224 .......... 9

**RULES & STATUTES**

Fed.R.Civ.P. 23(e) 4 .......... 7

**OTHER AUTHORITY**

c.f., Federal Judical Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 20 (3d. ed 2010), available http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf ) .......... 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff and Class Representative Laura Buford seeks final approval of a non-reversionary settlement resolving (a) on a class basis, certain wage and hour claims on behalf of approximately 795 individuals who worked for Defendant Medical Solutions, LLC ("Medical Solutions" or "Defendant") as non-exempt health care providers staffed at facilities operated by Sutter Health in California from May 10, 2014 to February 14, 2020 (the "Class Members"), and (b) certain claims for civil penalties under the California Private Attorneys General Act ("PAGA") on behalf of the State of California and approximately 1,771 "aggrieved" individuals employed by Defendant in California from August 28, 2018 to February 14, 2020, and who were staffed at facilities operated by various entities other than Sutter Health (the "Settlement Aggrieved Group" or "SAG"). The proposed $1,150,000 settlement provides approximately $607,500 in cash payments to the Class Members, along with another $50,000 in cash payments to the SAG, with the remaining balance of approximately $492,500 covering a modest and well-earned service award to Plaintiff, settlement administration costs, civil penalties to the State of California (including $150,000 allocated to civil penalties for the SAG's PAGA claims), and an award of "benchmark" attorney's fees and litigation costs. The parties and their counsel finalized the settlement after extensive and difficult arms-length negotiations overseen by an experienced and highly regarded mediator. The Court preliminarily approved the class component of the settlement on February 14, 2020, while simultaneously approving the PAGA-only component attributable to the SAG.

Since then, the Court-approved notice forms were mailed to the Class Members, who reacted very favorably to the settlement. Not one class member objected to the settlement, and only two class members requested exclusion. A separate notice was mailed to the SAG informing them of the settlement of the PAGA-only part of the settlement and their eligibility for a share of the proposed civil penalties. Accordingly,

on behalf of herself and the Class, Plaintiff respectfully requests the Court grant this motion, give its full and final approval to the settlement, and enter judgment accordingly.

## II. STATEMENT OF FACTS

Plaintiff outlined the details of the procedural and factual background of this matter in her Motion for Preliminary Approval of Class and Representative Action Settlement (filed December 10, 2019; Docket No. 33). To briefly refamiliarize the Court with this matter, in May 2018 Plaintiff Buford filed a class action complaint in the Alameda Superior Court asserting various wage and hour claims against Defendant on behalf of individuals employed by Medical Solutions as non-exempt “travel nurses” in California from May 10, 2014 onward. Plaintiff then filed a First Amended Complaint adding a cause of action under PAGA, after which Defendant removed the case to this Court in August 2018. [Declaration of Zachary M. Crosner (“Crosner Decl.”), ¶¶ 2-3; Docket No. 1.]

After in-depth formal and informal discovery, the parties participated in an adversarial mediation in August 2019. Following a full day of contentious negotiations and discussions regarding the claims and defenses in this action, as well as the risks involved in further litigation, the Parties ultimately reached agreement on all material terms. [Crosner Decl., ¶¶ 4-6.] The final terms of the proposed settlement are encompassed in the Joint Stipulation of Class Settlement and Release (“Joint Stipulation”) filed on or about December 10, 2019 (Docket No. 34).

On February 14, 2020, this Court issued its Order (the “February 14 Order”) (a) granting preliminary approval to the class component of the settlement and (b) approving the PAGA-only component attributable to the SAG. [Docket No. 40.] Notices were mailed to all Class, SAG and SAG-Class Members on March 30, 2020, with a 45-day window for Class Members to opt out or object to the class component of the proposed settlement. [Declaration of Alan Garrido (“Garrido Decl."), ¶¶ 10, 13.] As addressed at preliminary approval and in the February 14 Order, the California

Labor & Workforce Development Agency also was given notice of the settlement and preliminary approval hearing but did not submit any comment or objection to the proposed settlement of claims under PAGA. [February 14 Order, at ¶ 5 (Docket No. 40).]

## III. SETTLEMENT TERMS

### A. Proposed Settlement Terms.

In total, Defendant will fund a settlement in the amount of $1,150,000 (the "Gross Settlement Amount"). The Gross Settlement Amount is inclusive of all payments contemplated under the Settlement and accounts for: (1) all Individual Settlement Amounts to both the Class and the SAG; (2)Plaintiff's Enhancement Payment not to exceed $5,000; (3) civil penalties to the California Labor Workforce & Development Agency of $157,500 in satisfaction of PAGA, including $7,500 for the Class claims and $150,000 for the SAG claims; (4) settlement administration costs not to exceed $25,000; (5) reimbursement of litigation costs not to exceed $15,000; and (6) an award of "benchmark" attorney's fees not to exceed $287,500 (25% of the Gross Settlement Amount). No money will revert to Defendant. [Crosner Decl., ¶ 7.]

### B. Class Certification

Through its February 14, 2020 Order, the Court granted conditional certification of a settlement class defined as "all persons employed by Defendant in California as non-exempt employees, including but not limited to traveling healthcare professionals, who worked an assignment at any facility operated by Sutter Health or a related company during the Settlement Class Period (May 10, 2014 to February 14, 2020)." The Claim Administrator ultimately mailed class notices to 795 individuals identified as members of the Class, with 107 of those individuals included in both the Class and SAG. [Garrido Decl., ¶ 8.] Nothing has changed to require reconsideration of the findings supporting the Court's certification of the Settlement Class. [Crosner Decl., ¶ 8.]

### C. Settlement Funds and Distribution

Approximately $607,500 from the Gross Settlement Amount will be distributed to

the Class Members, while an additional $50,000 in civil penalties will be distributed to the SAG (with Class-SAG Members eligible to receive a payment from both funds). This is a cash settlement that did not require Class Members to submit a claim form to receive their settlement share, and both the Class Members and SAG Members will receive their settlement checks automatically via First Class U.S. Mail. [Crosner Decl., ¶ 9.] Only two class members opted out of the settlement, representing a 99.75% participation rate. [Garrido Decl., ¶ 16.]

Each Class Member who did not opt-out will be entitled to a pro rata share of the Net Settlement Amount based upon his or her total weeks worked during the Class Period, while each SAG Member is entitled to a pro rata share of the SAG Fund based upon his or her total pay periods worked during the SAG Period.[1] As addressed on preliminary approval, the Parties believe a pro rata distribution based on the number of weeks/pay periods worked by each participating individual during the relevant time periods will fairly allocate the settlement proceeds in light of the legal theories asserted and the evidence adduced prior to mediation. These methods are intended to ensure each individual receives a portion of the available settlement funds corresponding to the relative value of his or her potential claims, and the proposed allocation provides the most reasonable way to compensate Class and SAG Members based on the amount of time they worked for Medical Solutions and the number of instances they may not have been compensated properly and the number of potential missed meal and rest periods. [Crosner Decl., ¶¶ 9-10.] Awards will average about $745 for the Class Members, with the maximum award estimated at just over $4,000. The average SAG award is about $28, and the largest SAG award is about $98. [Garrido Decl., ¶ 18.]

**D. Settlement Administration**

The Settlement Administrator, CPT, Inc., carried out the notice plan contemplated by the settlement and as ordered by the Court, including running each

[1] The SAG is defined as "persons employed by Defendant in California as non-exempt employees, including but not limited to traveling healthcare professionals, who worked an assignment at any facility other than a facility operated by Sutter Health or a related company during the SAG Period."

address through the National Change of Address database and "skip-tracing" any notices returned as undeliverable. [Garrido Decl., ¶¶ 3-12.] The Class Notice, previously approved by the Court, duly informed Class Members of the settlement terms, including the estimated relief each Class Member will receive, the amounts to be requested for attorney's fees and class representative enhancement award, and the right to opt out of or object to the settlement. [Garrido Decl., Exhs. A and C.] The Settlement Administrator mailed at total of 2,459 Notices on March 30, 2020, including 688 Class Notices, 107 Class-SAG Notices, and 1,664 SAG Notices. [Garrido Decl., ¶¶ 8-10; Exhs. A-C.] Only 30 Notices ultimately were deemed undeliverable, meaning 2,429 individuals eligible to participate in the Settlement (approximately 98.77%) received their respective Notices and, out of the 795 Class Members, only 7 Notices were deemed undeliverable, representing a 99.12% success rate. [Garrido Decl., ¶ 9.] The 45-day response window for opting out or objecting to the class component of the settlement expired on May 14, 2020. [Garrido Decl., ¶ 8.] As of the filing of this motion, no objections and only 2 requests for exclusion were received by CPT. [Garrido Decl., ¶¶ 14, 16.] There are no outstanding disputes regarding the information used to calculate class member settlement shares. [Garrido Decl., ¶ 15.]

Consistent with the Court's February 14, 2020 Order and PAGA, the SAG Members were precluded from opting out of or objecting and the SAG Notice simply informed them of the pending settlement and their entitlement to a share of the proposed civil penalties. [Garrido Decl., Exh. B.]

**E. Attorney's Fees And Litigation Expenses**

Medical Solutions agreed not to oppose an application for an award of attorney's fees up to one-quarter of the gross settlement fund, or $287,500, as well as litigation costs and expenses up to $15,000.00. Plaintiff's counsel filed a separate motion for attorney's fees and costs, set to be heard concurrently with this motion, attesting to the nature and scope of the work performed as well the costs and

expenses incurred. [Crosner Decl., ¶ 11.] Importantly, not one class member objected to the proposed award of fees and costs. [Garrido Decl., ¶ 14.]

**F. Incentive Award For The Class Representative**

Plaintiff also seeks final approval of a class representative enhancement payment of $7,500, in addition to her pro rata share of the settlement proceeds. The proposed service award reflects Plaintiff's efforts to protect the class interests, the successful results achieved, the time she expended in the litigation, and the financial and professional risks she undertook. As detailed in her declaration submitted with the preliminary approval motion (Docket No. 36), Plaintiff was actively involved in the case, including meeting and conferring with counsel, assisting in counsel's investigation, providing relevant documents and emails, reviewing documents, and taking on the risks associated with filing a lawsuit against an employer for the benefit of the Class and the State. [Crosner Decl., ¶ 12.] As with the requested attorney's fees and costs, there were no class member objections to the proposed enhancement award. [Garrido Decl., ¶ 14.]

**G. Releases**

Upon final approval, Class Members will release Medical Solutions, LLC and other Released Parties (as defined in the Joint Stipulation) from all claims set forth in the operative complaint, or that could have been pleaded based on the factual allegations underlying the operative complaint, including PAGA claims, from May 10, 2014 to February 14, 2020.[2] The SAG will release only claims for violation of PAGA that were or could have been alleged based on the facts alleged in the FAC, from August 28, 2018 to February 14, 2020, consistent with Arias v. Superior Court, 46 Cal.4th 969, 985-86 (2009) (judgment in a PAGA case is "binding not only on the named employee plaintiff but also on government agencies and any aggrieved employee

[2] Lastly, certain claims are expressly excluded from both the Class Release and the SAG Release. These claims (the "Dittman Reserved Claims") relate to a certified class action pending against Defendant styled Dittman v. Medical Solutions, L.L.C., et al., Eastern District of California Case No. 2:17-cv-01851-MCE-CKD ("Dittman").

not a party to the proceeding"). No SAG Member is releasing any individual claims he or she may have against Defendant or any other Released Party. No one other than Class Representative Laura Buford is waiving his or her rights under California Civil Code Section 1542. [Crosner Decl., ¶ 13.]

**H. PAGA Penalties**

Finally, as addressed at length in connection with preliminary approval, the settlement provides for $210,000 to be allocated to civil penalties under PAGA, with $10,000 allocated to the PAGA claims of the Class, and the remaining $200,000 allocated to the PAGA claims of the SAG. Consistent with PAGA, a total of $157,500.00 from this sum will be paid to the Labor & Workforce Development Agency as the State's share of the civil penalties, with $2,500 included in the Net Settlement Amount for distribution to the Class Members and another $50,000 to be distributed to the SAG members. [Crosner Decl., ¶ 14.]

## IV. THE SETTLEMENT MEETS THE REQUIREMENTS FOR FINAL APPROVAL

In class action cases, the district court must approve any settlement. Fed.R.Civ.P. 23(e). The Court already conducted an inquiry into the settlement's fairness and adequacy in the preliminary approval motion and now the notice process has been completed and Plaintiff respectfully requests the Court, with the benefit of the class member reaction, revisit and confirm the settlement overall is fair, reasonable and adequate and should be fully and finally approved.

The "universal standard" in evaluating a class action settlement under Fed.R.Civ.P. 23(e) is whether the settlement is "fundamentally fair, adequate and reasonable." Fed.R.Civ.P. 23(e)(2); Officers for Justice v. Civil Service Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). "[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

reasonable and adequate to all concerned." Id.

As the Ninth Circuit has aptly recognized, "the very essence of a settlement is compromise." Id. at 624. "[I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." Linney v. Cellular Alaska Partnership, 151 F.3d 1234, 1242 (9th Cir. 1998). Even if a proposed settlement amounts to a fraction of the potential recovery, this does not mean the settlement is necessarily inadequate. Id.

A proposed settlement is presumed to be fair when (1) it is reached through arm's-length negotiations, (2) the putative class is represented by experienced counsel, and (3) the parties have conducted sufficient discovery. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116 (2d Cir. 2005). Here, all of the factors giving rise to a presumption of fairness exist. First, the proposed settlement was the product of arm's-length, non-collusive negotiations, overseen by a well-respected, independent mediator. [Crosner Decl., ¶ 6.] Second, the class is represented by experienced counsel. [Crosner Decl., ¶¶ 26-33.] Third, the parties exchanged a significant amount of information, both formally and informally, such that Plaintiff and her counsel are able to make an informed recommendation about the settlement. [Crosner Decl., ¶¶ 4-5.] Thus, the settlement is presumed to be fair.

In evaluating the fairness of a settlement, the district court may also consider the following factors: "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). Likewise, as the Court recognized in its February 14, 2020 Order, many of these same "Hanlon factors" may inform the Court's evaluation of the PAGA-only component of the settlement. February 14, 2020 Order (Docket No. 40), at ¶ 4. Lastly, the district court should satisfy itself that the settlement is

not the product of collusion between the plaintiff and the defendant. Class Plaintiffs v. Seattle, 955 F.2d. 1268, 1290 (9th Cir. 1992). Here, except for the absence of a governmental participant, each relevant factor weighs in favor of approving the settlement.

**A. The Strength of Plaintiff's Case.**

A settlement is not judged against what a plaintiff might recover had he or she prevailed at trial, nor does the settlement have to provide 100% of the damages sought to be fair and reasonable. Linney, 151 F.3d at 1242; White v. Experian Information Solutions, Inc., 803 F.Supp.2d 1086, 1098 (C.D. Cal. 2011) (rejecting contention settlement was not fair and reasonable even though it represented 99% discount off the maximum value of the claims); see also Wershba v. Apple Computers, Inc., 91 Cal.App.4th 224, 246, 250 (2001) ("Compromise is inherent and necessary in the settlement process…even if the relief afforded by the proposed settlement is substantially narrower than it would be if the suits were to be successfully litigated, this is no bar to a class settlement because the public interest may indeed be served by a voluntary settlement in which each side gives ground in the interest of avoiding litigation").

Plaintiff addressed the strengths and weaknesses of the class and PAGA claims and Defendant's defenses in detail in the motion for preliminary approval, and respectfully submits there has been no change in the law or facts of this case rendering the class claims any stronger than they were at preliminary approval. [Plaintiff's Motion for Preliminary Approval, at 12-18; Docket No. 33.] Although Plaintiff believes she could have prevailed, there were no guarantees as Defendant presented substantial evidence and legal defenses challenging the merits of Plaintiff's claims, as well as challenging class certification and the potential manageability of a trial on the PAGA claims. When the risks of prevailing at both certification and trial are factored into the equation, the settlement value is reasonable and supported. When the risks of litigation, the uncertainties involved in achieving class certification, the burdens of proof necessary to establish liability and prevail at trial on either a class or PAGA basis, the probability of appeal of a favorable judgment and its attendant delays, it is clear the total settlement amount of $1,150,000 is within the "ballpark" of

reasonableness.

**B. The Risk, Expense, Complexity and Likely Duration of Further Litigation**

Further litigation of this matter would not necessarily serve the interests of the class members, and would require class members to offer individualized evidence regarding their damages; importantly, the costs associated with such efforts would be substantial. In re: GMC Pick-Up Truck Fuel Tank Prods. Litig., 55 F.3d 768, 784 (3d Cir. 1995) ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"). By the same token, further litigation would cause significant delay of any eventual payments to the class members, assuming they even prevail. Lastly, the complete absence of objections and the paltry number of opt outs suggests rather strongly that the Class itself believes the benefits of the instant settlement far outweigh the prospects of continued litigation.

**C. The Risk of Maintaining Class Action Status Throughout Trial.**

Plaintiff and her counsel strongly believe this lawsuit is maintainable as a class action. However, there are risks associated with the class certification issue. This is particularly true in this matter given the nature of Defendant's business and the fact that, as a staffing company, its employees worked for a number of different clients and at dozens of medical facilities throughout California. While Plaintiff contends there are common themes applicable to all Class Members based on Defendant's own policies, she also recognizes the very real possibility that the Court might agree with Defendant and find insurmountable individual issues are present given the sheer number of client employers and locations across California where Medical Solutions staffed the Settlement Class and SAG Members.

Further, cases like Duran v. U.S. Bank, 59 Cal.4th 1 (2012) demonstrate the complexity of using statistical samples to litigate representative class claims, and demonstrate the very real risk that even using such techniques does not guarantee certification or safeguard against decertification regardless of class size. Thus, even

Plaintiff's preferred method of evidentiary proof comes with the potential risk of losing certification in the process. Plaintiff acknowledges Defendant's arguments do present significant risk as to both certification and maintaining certification and consequently this factor suggests settlement is preferable to continued litigation.

**D. The Amount Offered in Settlement**

Defendant agreed to settle the action for a Gross Settlement Amount of $1,150,000. As to the class component of the settlement, following deduction of attorney's fees and costs, the enhancement payment, the PAGA penalty payments, and settlement administration costs, this results in a Net Settlement Amount of around $607,500, and represents on a **net** basis around 16-17% of the estimated class-wide liability. As discussed above, these monies will then be proportionately distributed to Settlement Class Members according to number of weeks worked during the class period, and will result in an average share of approximately $745, with a maximum award in excess of $4,000. [Crosner Decl. ¶¶ 18-19; Garrido Decl., ¶ 18.]

It is also significant that none of the settlement funds revert back to Medical Solutions, and provide immediate benefit to a class of workers without a lengthy claims process. White, 803 F.Supp.2d at 1086; Kakani v. Oracle Corp., 2007 WL 1793774, at *7 (N.D. Cal. June 19, 2007); c.f., Federal Judicial Center, Managing Class Action Litigation: A Pocket Guide for Judges, at 20 (3d ed. 2010), available at http://www.fjc.gov/sites/default/files/2012/ClassGd3.pdf (reversionary provisions and/or cumbersome claims process may indicate lack of fairness).

As to the PAGA-only component of the settlement, Defendant will pay substantial penalties of $210,000 and, as addressed at preliminary approval such penalties serve the "primary purpose of PAGA, Jordan, 2018 U.S. Dist. LEXIS 25297, at *7-8). Further, the LWDA was given notice of the settlement and the January approval hearing and offered no objection or comment to the proposed PAGA penalties. "[W]ith respect to the PAGA claims, the Court finds persuasive that the California Labor & Workforce Development Agency ("LWDA") was invited to file a response to the proposed settlement agreement in

this case and elected not to file any objections or opposition, and "infers LWDA's non-response [as] tantamount to its consent to the proposed settlement terms, namely the proposed PAGA penalty amount." February 14, 2020 Order, at ¶ 5 (citing cases). As addressed below, Plaintiff also is providing the LWDA with notice of the final approval hearing and submitting a copy of this motion so that the LWDA will have another opportunity to comment on the proposed PAGA component of the settlement if it so desires.

Based on this, the size of the overall recovery well as the significant individual settlement awards supports a finding the proposed settlement is fair, adequate, and reasonable in all respects. Accordingly, this factor weighs in favor of approval as well. [Crosner Decl., ¶¶ 15-19.]

**E. The Stage of the Proceedings and the Extent of Discovery Completed**

Prior to reaching this settlement, Plaintiff's counsel conducted substantial formal and informal discovery and investigation into the claims alleged by Plaintiff, including, among other things reviewing and analyzing handbooks and other policy documents, and reviewing and analyzing time and payroll data produced by Defendant with the aid of a consulting expert. Plaintiff's counsel's evaluation of the case and potential damages are based on reliable data on class size (total current and former employees), pay period data, average hourly rate of pay, policy documents, and thousands of data points derived from pay and time records. In addition, Plaintiff's counsel has investigated the applicable law regarding the claims and defenses to the claims asserted in the litigation. [Crosner Decl., ¶¶ 4-5, 15.] Thus, Plaintiff and her counsel were able to act intelligently and effectively in negotiating the proposed Settlement. [Crosner Decl., at ¶ 15.] Plaintiff's counsel has sufficient familiarity with the facts of the case to make an informed decision about the fairness of the settlement.

**F. The Experience and Views of Counsel.**

Plaintiff's counsel has extensive experience in wage and hour class actions and is qualified to prosecute this action. Based on this combined experience, and after factoring in the risks discussed at length both above and at preliminary approval, Plaintiff's counsel are

confident the current proposed settlement is fair, adequate, and reasonable. [Crosner Decl., ¶¶ 15-19.]

**G. The Reaction of the Class to the Settlement.**

The settlement was well-received by the class. No objections have been filed, and only two class members opted out, for a 99.75% participation rate. [Garrido Decl., ¶¶ 14, 16.] As the Ninth Circuit and other federal courts recognize, class member reaction to the settlement is one of the most important factors to consider in determining if final approval should be granted. Mandujano v. Basic Vegetable Prods., Inc., 541 F.2d 832, 837 (9th Cir. 1976); see also In re: American Bank Note Holographics, 127 F.Supp.2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks omitted).

**H. No Collusion Between the Parties or their Counsel.**

As discussed above, the settlement is the product of adversarial, non-collusive, and arm's-length bargaining between experienced counsel, facilitated by a well-respected mediator. There are no undisclosed side agreements between the parties or their counsel. [Crosner Decl., ¶ 6.]

## V. PAGA PENALTIES AND NOTICE TO THE LWDA

The class component of the settlement also provides for $10,000 to be allocated to civil penalties under PAGA for the Class Members' potential PAGA claims, and Plaintiff requests the Court approve said amount. Consistent with PAGA, $7,500 of this amount will be paid to the Labor and Workforce Development Agency as the State's share of the civil penalties, with the remainder included in the Net Settlement Amount for distribution to the Class members.

Further, as discussed at the January 14, 2020 hearing on Plaintiff's motion for preliminary approval, and in Plaintiff's supplemental brief in support of preliminary approval (Docket No. 38), the Parties agreed to settle the PAGA claims of the SAG concurrently with the class settlement and allocated $200,000 in resolution of those

claims. Settlement of the SAG Members' PAGA claims on the proposed terms, without further lengthy and costly litigation, provides meaningful relief and, even on a risk discounted basis, the settlement amount furthers the policies and purposes underlying PAGA. Jordan, 2018 U.S. Dist. LEXIS 25297, at *7-8 ("The proposed settlement imposes a substantial penalty payment of $150,000, paid in exchange for a release of only those claims pled in the notice to the LWDA and the Complaint. This penalty has a substantial deterrent effect . . . [and] encourages compliance with the specific requirements of the Labor Code, which has the effect of protecting workers from unlawful employment practices and working conditions").

Plaintiff previously provided the LWDA with notice of the settlement along with a copy of the Joint Stipulation and, as the Court recognized in February 14 Order, the fact that the LWDA offered no comment or objection to the proposed PAGA is strongly persuasive in favor of approving the PAGA component of the settlement. [Feburary 14, 2020 Order, at ¶ 5 (Docket No. 40).] Nevertheless, out of an abundance of caution, Plaintiff again gave the LWDA notice of the final approval hearing and also submitted a copy of this motion. [Crosner Decl., ¶ 24; Exh. 1.]

## VI. THE SETTLEMENT ADMINISTRATOR'S FEES

The settlement provides for a payment to CPT of no more than $25,000 for its services as the Claim Administrator. As set forth in the Declaration of Alan Garrido, CPT has performed and will continue to perform its required duties through final distribution of the settlement funds, and incurred $29,500 in fees and expenses. [Garrido Decl., ¶ 19.] This amount is more than the initial estimate provided to the Court at preliminary approval, and the difference stems from the increase in the size of the SAG (which is still within the parameters of the Joint Stipulation[3]), and some miscommunication with CPT regarding the scope of services necessary to effectuate the Settlement and Notice procedure (Garrido

[3] Section V.A.1.b. of the Joint Stipulation provides for a pro rata increase in the size of the SAG, plus a safety factor of 10%, to account for the several months between the mediation and the approval hearing. The increase in the SAG, from approximately 1,333 to 1,771, is well withing the parameters of the Joint Stipulation.

Decl., ¶ 19), for which Plaintiff and her counsel take responsibility. Plaintiff and her counsel will make up the difference between the final costs of administering settlement and the amount provided for in the Joint Stipulation. [Crosner Decl., ¶ 25.] Accordingly, Plaintiff respectfully requests the Court approve payment of $25,000 to CPT from the Gross Settlement Amount. [Crosner Decl., ¶ 25.]

## VI. THE PROPOSED CLASS REPRESENTATIVE PAYMENT IS REASONABLE

Courts award class representative payments to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, and also to compensate class representatives for their time, effort and inconvenience. Factors considered in determining whether to grant such an award may include the risk to the class representative in commencing suit, both financial and otherwise; the notoriety and personal difficulties encountered by the class representative; the amount of time and effort spent by the class representative; the duration of the litigation and the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Consistent with the Joint Stipulation, Plaintiff now requests an enhancement of $7,500. This modest requested award was well-earned based on the risks she faced in coming forward as a lead plaintiff and the assistance she provided to counsel throughout the litigation. [Crosner Decl., ¶¶ 20-23; Declaration of Laura Buford (Docket No. 36), at ¶¶ 2-9.] Plaintiff submits the amount sought is well within the range of reasonableness for such awards in other wage and hour class actions. Nelson v. Avon 5 Prod., Inc. (N.D. Cal. Feb. 24, 2017) 2017 WL 733145, at *7 (approving incentive award of $10,000 where plaintiff "appeared for an all-day deposition, searched for documentation relating to the class action, reviewed documents and settlement papers, attended the mediation and subsequent negotiations, and aided Class Counsel with negotiation efforts"); Torchia v. W.W. Grainger, Inc. (E.D. Cal. 2014) 304 F.R.D. 256 (approving $7,500 incentive award).

## VII. CONCLUSION

For all the foregoing reasons, Plaintiff Laura Buford respectfully requests that the Court grant this motion and grant final approval of the proposed class action settlement, approve the requested class representative enhancement payments, approve the payment of PAGA penalties to the State, approve payment of the Settlement Administrator's fees and expenses, approve the award of attorney's fees and costs requested in Plaintiff's separate Motion for Award of Attorney's Fees and Costs, and enter judgment in this action.

Dated: June 15, 2020

CROSNER LEGAL, P.C.

By: ______________________
ZACHARY M. CROSNER
Attorneys for Plaintiff LAURA BUFORD